**TRIGIANI & ENGLE, LLP**
**BY: MICHAEL J. ENGLE, ESQUIRE**
**ID NO. 85576**
**123 SOUTH BROAD STREET, SUITE 1812**
**PHILADELPHIA, PA 19109**
**(215) 985-4275**

**ATTORNEY FOR DEFENDANT**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **vs.** | : | **CRIMINAL NO. 08-167** |
| | : | |
| **ROBERT TRAUFFER** | : | |

**O R D E R**

**AND NOW,** to wit this day of , 2009, upon consideration of the Defendant's Motion to Preclude Consideration of "Relevant Conduct" Evidence, and after response by the Government, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the Defendant's Motion is GRANTED based upon the Court's finding that the Government has breached the terms of its Guilty Plea Agreement with the Defendant. Specific Performance is therefore ORDERED.

BY THE COURT:

___________________________________
HONORABLE CYNTHIA M. RUFE
United States District Court Judge

**TRIGIANI & ENGLE, LLP**
**BY: MICHAEL J. ENGLE, ESQUIRE**
**ID NO. 85576**
**123 SOUTH BROAD STREET, SUITE 1812**
**PHILADELPHIA, PA 19109**
**(215) 985-4275**

**ATTORNEY FOR DEFENDANT**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **vs.** | : | **CRIMINAL NO. 08-167** |
| | : | |
| **ROBERT TRAUFFER** | : | |

**MOTION TO PRECLUDE CONSIDERATION OF "RELEVANT CONDUCT" EVIDENCE AT SENTENCING BASED UPON THE GOVERNMENT'S BAD FAITH AND BREACH OF THE EXPRESS TERMS OF THE GUILTY PLEA AGREEMENT**

**AND NOW COMES**, your Defendant, ROBERT TRAUFFER, by and through his counsel, MICHAEL J. ENGLE, ESQUIRE, hereby moving this Honorable Court to consider the enclosed arguments contained herein.

1. On or about March 25, 2008, the Defendant was charged by way of indictment with four counts of income tax evasion, as well as thirty-four counts of filing false income tax returns.

2. Prior to the time of indictment, the Defendant had been represented by James Becker, Esquire who had been engaged in negotiations with the Government regarding the nature and extent of the charges to be filed against Robert Trauffer.

3. On or about March 24, 2008, Assistant United States Attorney Michelle Morgan-Kelly advised Attorney Becker, via email, that the Government was proceeding with an indictment against the Defendant with the understanding that several potential counts would not be charged unless the Defendant failed to enter into a guilty plea agreement.[1] The Government indicated that it would give the Defendant a short time to accept its guilty plea agreement to the entire indictment, however, should the Defendant refuse to give up his right to trial and plead guilty, then the Government would supersede the indictment to add additional charges. See "Exhibit A" which is attached hereto and made a part hereof.

[1] Despite the fact that the Defendant's prior counsel wished to negotiate a plea agreement with a tax loss below $200,000.00 and the fact that the Government agreed to such a charging process, it is well known that the United States Attorney's Office adheres to a strict policy that it must charge all criminal offenses that are "readily provable" in any indictment or criminal information. Curiously, the Government's threat of a superseding indictment in this instance would seem to violate this long standing charging policy in our district. See "Exhibit A". Also, the Government notes in its correspondence dated June 1, 2009 that the case agent did not identify the taxpayers and the audits referenced in the "relevant conduct" chart until January of 2009, **BEFORE** the Government submitted its Change of Plea Memorandum and the Defendant appeared before this Honorable Court to enter his guilty pleas but long **AFTER** the prosecutor's email threat of a superseding indictment. See "Exhibit I". Nevertheless, the Defendant was induced to sign the guilty plea agreement and to give up his many constitutional rights based upon the express agreement that the total tax loss in this case would be capped at a number under $200,000.00.

4. The Defendant subsequently retained new counsel who was presented with a guilty plea agreement that required the Defendant to plead guilty to the entire indictment with the understanding that the Base Offense level (which would include all "relevant conduct") would be 16, with a two point enhancement pursuant to U.S.S.G. § 2T1.4 (b) (1), for a Total Adjusted Offense level of 18. The agreement then contemplated a three point reduction in the Total Offense Level based on acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. See "Exhibit B" which is attached hereto and made a part hereof.

5. Based upon the Government's agreement to limit the scope of the charges (as articulated to prior counsel in writing at "Exhibit A") to the thirty-eight counts in the indictment as well as the stipulations contained in the guilty plea contract to the amount of total loss, the base offense level, and the total offense level, the Defendant was induced to waive his various fundamental constitutional rights.

6. After executing the Guilty Plea Agreement/Contract with the Government, the Defendant upheld his end of the bargain by tendering pleas of guilty to all counts in the indictment on February 2, 2009.

7. At the time the Defendant appeared before this Honorable Court to enter his guilty pleas, the Government again submitted to the Court and the Defendant, in writing, the express terms of

the Guilty Plea Agreement. See "Exhibit C" which is attached hereto and made a part hereof.

8. In the Change of Plea Memorandum the Government specifically reiterated the contract terms it entered into with the Defendant by stating that: "The parties stipulate that the base offense level for this conduct is 16 under USSG § 2T1.4 (a) (1) and Tax Table 2T4.1, that a 2 point enhancement applies because defendant was in the business of preparing taxes under § 2T1.4 (b) (1), resulting in an adjusted offense level of 18. The government agrees that, as of the date of the agreement, Defendant was entitled to a 3-point reduction in his guidelines level for acceptance of responsibility, resulting in a total offense level of 15." See "Exhibit C" at page 2.

9. Upon receiving the draft Pre-Sentence Investigation Report, on or about April 23, 2009 the Government objected to the failure of the PSI report to reflect "relevant conduct" (a term of art used in the Federal Sentencing Guidelines at Section 1B1.3) and informed the Probation Officer that the Government would be supplying "evidence" of other alleged criminal activity on the part of the Defendant which would increase the tax loss in this case. See "Exhibit D" which is attached hereto and made a part hereof.

10. The Government eventually supplied the Probation Officer with a chart that allegedly demonstrates "relevant conduct" on

the part of the Defendant which would increase the tax loss to $401,014.20. But for the Government's act of supplying this alleged "relevant conduct" information, the guidelines would have been calculated in conformity with the stipulations contained in the Guilty Plea Agreement.

11. Based on the Government's actions in supplying the "relevant conduct" information, the Base Offense level at paragraph 23 of the PSI Report was determined to be 20, rather than the agreed upon 16 ("Exhibit B" at paragraph 9).

12. Based on the Government's actions in supplying the "relevant conduct" information, the Adjusted Offense level at paragraph 28 of the PSI Report was determined to be 22, rather than the agreed upon 18 ("Exhibit B" at paragraph 9; "Exhibit C" at page 2).

13. Based on the Government's actions in supplying the "relevant conduct" information, the Total Offense level at paragraph 33 of the PSI Report was determined to be 19, rather than the agreed upon 15 ("Exhibit C" at page 2).

14. The Government has acted to breach the specific terms and conditions of the Guilty Plea Agreement entered into with the Defendant and has acted in bad faith, thereby denying the Defendant due process of law.

15. The Defendant moves for specific performance of the contract terms he entered into with the Government, thereby

requiring the removal of any "relevant conduct" information from the PSI Report and the exclusion of any such "evidence" at the time of sentencing.

16. On or about April 27, 2009, counsel for the Defendant informed the Government in writing that it had breached the terms of the Guilty Plea Agreement and acted in bad faith by supplying the alleged "relevant conduct" information to the Probation Officer and moved for the immediate production of discovery materials relating to this new sentencing evidence. See "Exhibit E" which is attached hereto and made a part hereof.

17. On or about May 5, 2009, the Government responded to Defense counsel's letter of April 27th by stating, in part, that the Government had a "duty of candor" to the Court and Probation Department requiring disclosure of the "relevant conduct" information, nevertheless, the Government would abide by its agreement and recommend a sentence within the guideline range contemplated by the stipulated tax loss. See "Exhibit F" which is attached hereto and made a part hereof.

18. On or about May 13, 2009, Defense counsel requested in writing the production of discovery materials so that the Defendant could investigate and defend against the allegations of "relevant conduct" at the time of sentencing in this matter. See "Exhibit G" which is attached hereto and made a part hereof.

19. On or about May 22, 2009, the Government responded in writing by stating, in part, that much of the information sought by the Defendant is not "discoverable" pursuant to 26 U.S.C. § 6103 (a), that other materials constituted "work product", and that the Government merely intended to call the case agent as a witness to discuss his summary chart at sentencing in order to prove the "relevant conduct" allegations. See "Exhibit H" which is attached hereto and made a part hereof.

20. On or about June 1, 2009, the Government provided the Defendant with the case agent's summary chart. No other discovery materials have been supplied to the Defendant in connection with the Government's alleged "relevant conduct" evidence. See "Exhibit I" which is attached hereto and made a part hereof.

21. On or about November 27, 2009, the Government provided the Defendant with another "finalized" chart relating to the alleged "relevant conduct" evidence. See "Exhibit J" which is attached hereto and made a part hereof.

22. Pursuant to Federal Rule of Criminal Procedure 26.2 (g) (2), the Defendant is entitled to production of *Jencks* materials for purposes of a sentencing hearing. No such material has been supplied by the Government.

23. Pursuant to Federal Rule of Criminal Procedure 32 (i) (1) (C), the Defendant is entitled to production of "sentencing

discovery" materials that relate to determinations, such as relevant conduct, made in the PSI report. No such material has been supplied by the Government.

24. According to the United States Attorney's Manual, prosecutors "should disclose to defense counsel, reasonably in advance of the sentencing hearing, any factual material not reflected in the presentence investigation report that he/she intends to bring to the attention of the court." *United States Department of Justice*, United States Attorney's Manual (U.S.A.M.), Chapter 9-27.750. No such material has been supplied by the Government.

25. The discovery of the tax materials requested by the Defendant is permitted by 26 U.S.C. § 6103 (h) (4) (B) - (D).

26. The Defendant moves for the exclusion of any "relevant conduct" evidence at the time of sentencing based upon the Government's failure to honor its discovery obligations.

WHEREFORE, the Defendant respectfully requests that this Honorable Court grant the relief requested herein based upon the arguments set-forth more fully below in the Defendant's Memorandum of Law.

## MEMORANDUM OF LAW

### I. THE GOVERNMENT HAS BREACHED THE GUILTY PLEA AGREEMENT.

The Government has breached the promises made in the Guilty Plea Agreement with the Defendant by submitting alleged "relevant conduct" evidence to the Probation Officer, and the Court, for inclusion in the sentencing guideline calculation. This direct breach of the most critical terms and conditions negotiated with the Government was done in bad faith and serves to violate the due process rights of the Defendant. The parties to the Guilty Plea Agreement in the instant matter entered into a contract in which the Base Offense level, which is calculated after consideration of all offense and "relevant conduct" information, was stipulated to based upon a total tax loss of $189,316.00.[2] Therefore, the Defendant respectfully requests that this Honorable Court order specific performance of the contract

---

[2] As demonstrated by the Pre-Sentence Investigation Report prepared by Probation Officer Hassinger, the "relevant conduct" evidence is taken into account when determining the Base Offense level. See Paragraphs 13 and 23 of the PSI Report. Here, the Probation Officer credited the Government's "evidence" as submitted in the summary chart. See Paragraph 13 of the PSI Report. This "relevant conduct" information then served to modify the Tax Loss from $189,316.00, as stipulated to in the Plea Agreement, and increased it to $401,014.20. See Paragraph 14 of the PSI Report. Consequently, the calculation of the Base Offense level changed from a level 16 to a level 20 under the sentencing guidelines. See Paragraph 23 of the PSI Report. Unfortunately, it was the Defendant's express belief and understanding, based upon the contract he entered into with the Government, that the Base Offense level would be 16 because of a Tax Loss of $189,316.00. See "Exhibit B" at paragraph 9.

provisions at issue by precluding the Government from submitting any "relevant conduct" evidence to the Probation Department or the Court for consideration at the time of sentencing.

Under Third Circuit precedent, it is up to the District Court to: (1) determine what the terms of the plea agreement were, under principles of contract law; (2) to determine whether the government's conduct violated the plea agreement; and (3) to determine the appropriate remedy. United States v. Hayes, 946 F.2d 230, 233 (3d Cir. 1991). In determining whether the government's conduct violated the plea agreement, the Court must examine "what was reasonably understood by the defendant when entering the plea of guilty." United States v. Shelton, 179 Fed. Appx. 809, 811 (3d Cir. 2006) (emphasis added); United States v. Roman, 121 F.3d 136 (3d Cir. 1997). The remedy for breach of the plea agreement is typically either: (1) withdrawal of the guilty plea; or (2) specific performance. Where a defendant does not wish to withdraw his guilty plea, the appropriate remedy is specific performance of the agreement. See United States v. Shelton, 91 Fed.Appx. 247, 248, 2004 WL 628861 at 1 (3d Cir. 2004).

In the matter *sub judice*, the Defendant has no desire to withdraw his pleas of guilty because he continues to acknowledge his responsibility for the criminal acts that were charged in the indictment. However, Robert Trauffer expressly rejects the

Government's assertions with regard to the "relevant conduct" evidence, especially since the Government has produced no actual evidence to support its claims in that regard. While the Government may wish for the accused to simply "take its word for it", there nonetheless remains that nagging issue of proof when an allegation is leveled against a citizen in a criminal court of law. Here, the Government has no such proof and that is why it agreed to charge this case in the manner that it did in March of 2008. The Government attorney made a deal with the Defendant and now she wishes to sneak in the "back door" what she so obviously could not introduce through the "front door" of this criminal prosecution. The bargained for deal is supposed to be honored in all respects, yet in this case the prosecutor has failed to keep the fundamental promises made in the Guilty Plea Agreement.

The United States Supreme Court has long held that when a prosecutor makes a promise in a plea agreement, he or she must keep that promise. See Santobello v. New York, 404 U.S. 257, 261 (1971). The Supreme Court has stated that there must be "fairness in securing agreement between an accused and a prosecutor." Id. In the Third Circuit, "the government must adhere strictly to the terms of the bargain[s] it strikes with defendants." United States v. Miller, 565 F.2d 1273, 1274 (3d Cir. 1977). "Although a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed

under contract-law standards...." United States v. Badaracco, 954 F.2d 928, 939 (3d Cir. 1992). "Thus, the government cannot resort to a rigidly literal approach in the construction of language." Id. (citing United States v. Crusco, 536 F.2d 21 (3d. Cir. 1976). "'In determining whether the terms of a plea agreement have been violated, [the] court must determine whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty.'" Id. (quoting United States v. Nelson, 837 F.2d 1519, 1521-22 (11th Cir. 1988). "The rationale for this is evident. By entering into a plea agreement, a defendant voluntarily and knowingly surrenders a plethora of constitutional rights in exchange for a commitment by the prosecutor to do or not do certain things. When the prosecutor breaches that agreement, he or she violates the defendant's due process rights by implicating the consideration and voluntariness upon which that plea was based." Dunn v. Colleran, 247 F.3d 450, 461 (3d Cir. 2001) (citing Mabry v. Johnson, 467 U.S. 504, 509 (1984)).

In the instant matter, Robert Trauffer clearly and reasonably understood what the Government specifically stated in the Change of Plea Memorandum concerning the Tax Loss and resultant sentencing guideline calculations. See Exhibit C" at page 2. One cannot reasonably understand a stipulation to a specified Tax Loss level (and corresponding guideline level) to

allow for the Government to change that agreement by submitting "evidence" that was never disclosed to the Defendant prior to tendering his pleas of guilty. See United States v. Piggie, 303 F.3d 923 (8th Cir. 2002) (holding that the defendant could not challenge the tax loss to which he stipulated in the plea agreement). An agreement to the Tax Loss and Base Offense level necessarily includes an analysis of "relevant conduct" because the existence of Section 1B1.3 evidence would by definition modify the Tax Loss and Base Offense level.[3] Therefore, the Defendant could have only understood these particular Tax Loss and Offense Level stipulations to be inclusive of any possible "relevant conduct" in this case.

While it is understood that the stipulations to the Tax Loss and Guideline calculations contained in the Guilty Plea agreement

---

[3] The Government attempts to speak out of both sides of its mouth in this case. The Government states that it has evidence to "prove" a substantially higher Tax Loss, thereby justifying a higher sentencing guideline range, yet it also states that it will abide by its "agreement" with the Defendant and recommend a sentence within the guideline range that corresponds to the Tax Loss and Offense level stipulated to in the Guilty Plea Agreement. See "Exhibit F". If the terms of the Plea Agreement truly permit the Government to submit the "relevant conduct" evidence to this Court and Probation Officer and to present testimony at sentencing concerning these new allegations of criminal conduct, then why would the Government ever contemplate limiting its sentencing recommendation based on what it stipulated to in the Plea Agreement? Assuming *arguendo* that the Government can, by the express language of the contract, properly make "relevant conduct" arguments, then it would stand to reason that it would also not be limited in how it makes its sentencing recommendation to this Honorable Court.

are not binding on this Honorable Court, that fact does not change the contract breach that has occurred or the need for specific performance. Our courts have found that "**[e]specially when the prosecutor's promise is not binding on the court, the defendant does not bargain for a specific sentence but for a lock on what the prosecutor can do and say at sentencing.** That the sentencing court does not follow the prosecutor's lead is irrelevant. A defendant's constitutional rights are violated when a prosecutor reneges on the consideration underlying the defendant's plea of guilty." Id. at 461-62 (citing United States v. Camarillo-Tello, 236 F.3d 1024 (9th Cir. 2001)). "Thus, we have held that the 'doctrine that the government must adhere to its bargain in the plea agreement is so fundamental that even though the government's breach is inadvertent and the breach probably did not influence the judge in the sentence imposed, due process and equity require that the sentence be vacated.'" Id. at 462 (quoting United States v. Hayes, 946 F.2d 230, 233 (3d Cir. 1991)).

Robert Trauffer bargained for a lock on what the Government prosecutor could and would present at the time of sentencing with respect to the applicable Tax Loss as well as the corresponding Base Offense level and Total Offense level under the Federal Sentencing Guidelines. Regardless of what sentence this Honorable Court ultimately decides to impose, the breach of the

plea agreement has occurred and the Defendant's constitutional rights have been violated by the Government's act of producing alleged "relevant conduct" evidence to the Probation Officer and the Court for consideration at sentencing.

In United States v. Shelton, the United States Court of Appeals for the Third Circuit held that the government breached its plea agreement with the defendant when it called for a higher base offense level than that to which the parties had stipulated to in their agreement. United States v. Shelton, 91 Fed.Appx. 247, 2004 WL 628861 (3d. Cir. 2004); see also United States v. Badaracco, 954 F.2d at 940; United States v. Lawlor, 168 F.3d 633, 637 (2d Cir. 1999). In Shelton, the parties had expressly stipulated to an offense level of 20, while the probation department found that the correct offense level was actually a 26. Id. at 248. At sentencing the prosecutor stated that he believed that the probation department's calculation was correct and then asked for a substantial sentence. Id. "In this instance the prosecutor's position at sentencing conflicted directly with the government's unambiguous and specific Agreement stipulation that Shelton's base offense level was 20." Id. The Court of Appeals required strict adherence to the terms of the plea agreement and, because the defendant did not wish to withdraw his guilty plea, the Court ordered specific performance of the agreement. Id.; Lawlor, 168 F.3d at 638.

Similarly, in United States v. Rivera the Third Circuit held that the government breached the plea agreement entered into with the defendant by deviating from the stipulations it had made regarding the base offense level applicable in that case. United States v. Rivera, 357 F.3d 290, 292 (3d Cir. 2004). There, the plea agreement contained a stipulation that the base offense level was 38 and the total offense level was 35, however, the probation department assessed the defendant with a leadership role, pursuant to U.S.S.G. § 3B1.1 (a), that resulted in an increase of four levels under the guidelines from 35 to 39. Id. The defendant objected to this increase, noting that it violated the terms and conditions of the stipulations contained in the defendant's guilty plea agreement. Id. At sentencing the prosecutor indicated that the government agreed with the probation department's conclusions in the PSI report. Id. at 295.

However, the Third Circuit found that "[t]he plea agreement stated: 'In accordance with the above, the applicable guidelines total offense level is 35.' The statement by the United States' attorney that 'we stand by the probation officer's conclusions,' which included the recommendation that the Offense Level should be 39 was inconsistent with the stipulation entered into by the United States that the applicable Offense Level would be 35. By, in effect, endorsing the Probation Office's recommendation of an

Offense Level of 39, the government breached its agreement that the stipulated applicable Offense Level would be 35." Id. The Court of Appeals again noted that the "possibility that the district court might have adopted the probation officer's findings and recommendations even had the government not urged their adoption is not relevant to the question of breach." Id. at 295, n.6.

In the matter *sub judice*, the Government not only agrees with what the Probation Officer has calculated in the PSI report regarding the applicable guideline range, it supplied the underlying information relating to this "relevant conduct" issue. But for the Government's actions in this regard, the Probation Officer would not have had any basis to calculate the guidelines in a manner that is inconsistent with the stipulations entered into in the plea agreement. Surely, if the Government's mere act of agreeing with a finding by the probation department in a PSI report that does not comport with a stipulation in a plea agreement can be deemed a breach, then the affirmative act of supplying the probation department with otherwise unknown "relevant conduct" evidence must be deemed a breach of the Defendant's guilty plea agreement in this case.

Nevertheless, the Government attempts to assert that its actions are permitted by the general language contained in the plea agreement at paragraphs 6 and 9 to argue the applicability

of this alleged "relevant conduct" information. See "Exhibit F". Paragraph 6 (b) of the Guilty Plea Agreement states that at sentencing the Government may: "Comment on the evidence and circumstances of the case, bring to the Court's attention all facts relevant to sentencing including evidence relating to dismissed counts, if any, and to the character and any criminal conduct of the defendant...." See "Exhibit B". The Government also points to the language in paragraph 9 which states that "[i]t is understood and agreed that: (1) the parties are free to argue the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments, and departures." See "Exhibit B". However, all of this language is general in its nature and ambiguous at best. It does not specifically state that the Government may introduce or discuss "relevant conduct" evidence, as that term is defined in U.S.S.G. § 1B1.3, that would change or modify a specific stipulation concerning the Tax Loss and applicable guideline levels. If such language had that effect, then general provisions in the Guilty Plea Agreement would trump specific provisions of the contract, and that simply makes no sense. Under that theory, there would be no point in negotiating or entering into any stipulations with the Government. Moreover, under basic contract law, specific provisions of the agreement trump general provisions and any ambiguity in the language of the

contract is to be construed against the drafter (the Government). See *Corbin on Contracts* § 24.23 (revised ed. 1998); *Restatement (Second) of Contracts* § 203.

Interestingly, this same type of justification argument was asserted by the Government in Rivera and was expressly rejected by the Third Circuit. Rivera, 357 F.3d at 295. The Court of Appeals addressed this issue by saying:

> The government's most forceful argument is that the provision in the plea agreement - that 'except as otherwise provided in this agreement, [the United States] reserves the right to take any position with respect to the appropriate sentence to be imposed on Isaac [Rivera] by the sentencing judge' - permitted the government to advocate a role enhancement. **However, this argument, based on the broadly worded exception, runs counter to, and therefore is trumped by, the specific stipulation in the agreement.** *See Corbin on Contracts* § 24.23 (revised ed. 1998) ("If the apparent inconsistency is between a clause that is general and broadly inclusive in nature and one that is more limited and specific in its coverage, the more specific should ... be held to prevail over the more general term"); *see also Restatement (Second) of Contracts* § 203. **Because the Offense Level *was* specifically stipulated to, whereas the government's right to advocate a role enhancement was not, the government's endorsement of an enhancement that would raise the Offense Level above the stipulated level contravened the plea agreement. Moreover, to the extent there is ambiguity caused by the 'little bit of poor draftsmanship' conceded by the prosecutor, we must construe the agreement against the government as drafter.**

Id.; see also id. at 295, n.7 (noting that government later changed plea agreement language to omit any stipulation to Total Offense level in order to allow for advocacy of other enhancements at sentencing).

In the instant matter before this Honorable Court, the Government did stipulate to a Base and Total Offense level based upon a specific stipulation to the applicable Tax Loss. The broadly worded exceptions referenced by the Government in its letter of May 5, 2009 ("Exhibit F") obviously run counter to, and are therefore trumped by, the specific stipulations entered into in the Guilty Plea Agreement and then reiterated in the Government's Change of Plea Memorandum. Because the Tax Loss and Offense Level *was* specifically stipulated to, whereas the Government's right to advocate a "relevant conduct" enhancement was not, the Government's endorsement of an enhancement that would raise the Offense Level above the stipulated level contravened the plea agreement.

In addition, the Government attempts to justify its bad faith and breach of the express terms of the Guilty Plea Agreement by claiming that "the government has a duty of candor to the Court and the Probation Office, and would be remiss were it not to advise both of the full scope of defendant's unlawful activities." See "Exhibit F". This feigned ethical argument in support of the Government's unlawful breach of contract has no merit. In United States v. Cooper, the United States Court of Appeals for the Tenth Circuit confronted, and rejected, this exact same ethical argument from the Government in a case where it found that the prosecution had breached its plea agreement

with the defendant. United States v. Cooper, 70 F.3d 563, 566-67 (10th Cir. 1995). There, the government had asserted that defendant's offense level under the guidelines was a level 5, however, the probation department calculated the offense level as a 13. Id. at 564. The plea agreement had stipulated that the relevant conduct for the case occurred after January 31, 1990, yet the government proceeded to elicit testimony at sentencing regarding conduct prior to that date which ultimately demonstrated a greater loss amount than that which had been agreed upon by the parties. Id. at 565. The government argued to the Court of Appeals "that it was under an ethical duty to bring evidence of loss to the sentencing court's attention regardless of the nature of the plea agreement." Id. at 566. The Court Appeals rejected this ethical argument by stating that:

> It is disappointing that the government seeks to create an ethical conflict between its duty to inform the court and its duty to keep its promises. **This ethical dilemma, to the extent that there is one, must be resolved at the time the government makes its plea agreement. At that point, the government must determine whom to charge and what to charge. Should subsequent information come to the government's attention requiring it to withdraw from the plea agreement, that is certainly understandable. What is not understandable is that the government would wait until the sentencing hearing and then attempt to disregard the sole consideration given for the defendant's guilty plea because of an ethical duty of which the government was well aware from the start.**[4] It is critical

[4] Interestingly, the Government notes in its correspondence dated June 1, 2009 that the case agent identified the taxpayers and the audits referenced in the "relevant conduct" chart in January of 2009, **BEFORE** the Government submitted its Change of

> that the government stand by its agreements for many reasons, but two rise to the fore: First, as the government attorney in *Jimenez* noted, as a 'matter of honor.' Second, as the government's attorney admitted during oral argument in this case, in order to encourage plea bargaining. Hopefully, government prosecutorial conduct should set the ethical standard; minimally it should comply with the law.

Id. at 567.

Here, the Defendant was induced to plea bargain with the Government as direct result of the promises made regarding the nature and extent of the charges, the corresponding Tax Loss, and the resultant sentencing guideline calculations. The introduction of alleged "relevant conduct" evidence by the Government AFTER the Defendant bargained in good faith and entered pleas of guilty is unconscionable, unethical and a clear breach of the Guilty Plea contract. The Government should be precluded from introducing any "relevant conduct" evidence at sentencing is this case and the PSI Report should be modified to remove any reference to, or consideration of, this "evidence".

---

Plea Memorandum and the Defendant appeared before this Honorable Court to enter his guilty pleas. If the Government was aware of other applicable criminal conduct on the part of the Defendant, then it had the option at that time, before the entry of a negotiated guilty plea, to inform the Court and the Defendant of this detail. The Government chose to say nothing about this "relevant conduct" evidence and it failed to withdraw from or modify the plea bargain it had entered into with the Defendant.

## II. THE GOVERNMENT HAS FAILED TO MEET ITS SENTENCING DISCOVERY OBLIGATIONS.

On or about April 27, 2009, counsel for the Defendant informed the Government in writing that it had breached the terms of the Guilty Plea Agreement and acted in bad faith by supplying the alleged "relevant conduct" information to the Probation Officer and moved for the immediate production of discovery materials relating to this new sentencing evidence. See "Exhibit E". On or about May 5, 2009, the Government responded to Defense counsel's letter of April 27th by stating, in part, that the "relevant conduct" discovery materials were voluminous. See "Exhibit F". On or about May 13, 2009, Defense counsel requested in writing the production of specific discovery materials so that the Defendant could investigate and defend against the allegations of "relevant conduct" at the time of sentencing in this matter. See "Exhibit G".

On or about May 22, 2009, the Government responded in writing by stating, in part, that much of the information sought by the Defendant is not "discoverable" pursuant to 26 U.S.C. § 6103 (a), that other materials constituted "work product", and that the Government merely intended to call the case agent as a witness to discuss his summary chart at sentencing in order to prove the "relevant conduct" allegations. See "Exhibit H". On or about June 1, 2009, the Government provided the Defendant with the case agent's summary chart which provides no detail as to how

or why these taxpayer returns were determined to be false or improper. No other discovery materials have been supplied to the Defendant in connection with the Government's alleged "relevant conduct" evidence. See "Exhibit I". The Government asserts that no IRS auditors or any of the individual taxpayers would be called as a witness at sentencing, rather the case agent would testify about audits he did not perform based on his review of an IRS database. Furthermore, on or about November 27, 2009 the Government sent the Defendant another "finalized" chart relating to the "relevant conduct" evidence. See "Exhibit J". The discovery provided to the Defendant to date fails to supply any detail to substantiate the Government's claims regarding the "relevant conduct" allegations and the Defendant cannot effectively investigate, challenge or litigate this issue without the materials he has previously requested in discovery on this issue. See "Exhibits H, I and J".

Despite the Government's assertions to the contrary, the Defendant's requests for sentencing discovery materials in this situation are reasonable and proper. Pursuant to Federal Rule of Criminal Procedure 32 (i) (1) (C), the Defendant is entitled to production of "sentencing discovery" materials that relate to determinations, such as relevant conduct, made in the PSI report. "Notice and the opportunity to be heard are the core of due process. Rule 32 requires that except in certain limited

circumstances, the defendant must have the opportunity to review information that will be used for sentencing. Though Rule 32 only expressly deals with the right to review the presentence investigation report, the right to review other information relied on by a court at sentencing is implicit in the adversarial scheme created by Rule 32 and the requirement of Rule 32 that both counsel for the defendant and the government must be provided 'an opportunity to comment on the probation officer's determination and on other matters related to the appropriate sentence.'" United States v. Hayes, 171 F.3d 389, 392 (6th Cir. 1999). Additionally, pursuant to Federal Rule of Criminal Procedure 26.2 (g) (2), the Defendant is entitled to production of *Jencks* materials for purposes of a sentencing hearing.

In the instant matter, the Government has completely ignored its duty to provide the Defendant with any discovery materials in support of its "relevant conduct" claims, thereby serving to deprive Robert Trauffer of due process of law. According to the United States Attorney's Manual, prosecutors "should disclose to defense counsel, reasonably in advance of the sentencing hearing, any factual material not reflected in the presentence investigation report that he/she intends to bring to the attention of the court." *United States Department of Justice*, United States Attorney's Manual (U.S.A.M.), Chapter 9-27.750. Perhaps the prosecution in this case should adhere to the

teachings of its own manual. Moreover, the Government's assertions that certain tax information cannot be disclosed pursuant to 26 U.S.C. § 6103 (a) and that other information constitutes "work product" are both legally incorrect and disingenuous.

First, a tax return or return information may be disclosed in a court proceeding such as this case under three circumstances that apply here. See 26 U.S.C. § 6103 (h) (4). One, disclosure can occur "if the treatment of an item reflected on such return is directly related to resolution of an issue in the proceeding." 26 U.S.C. § 6103 (h) (4) (B). Here, the information contained in the tax returns at issue are critical to the determination of "falsity" as alleged by the Government and the Defendant cannot investigate or defend against the "relevant conduct" allegations without access to the underlying tax returns and the individual taxpayers. Two, taxpayer returns can be properly disclosed "if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding." 26 U.S.C. § 6103 (h) (4) (C). Here, the tax returns at issue were allegedly prepared by the Defendant as the accountant for the individual taxpayers identified in the Government's chart. Therefore, the transactional relationship between taxpayer and tax preparer

exists and would permit disclosure since Robert Trauffer is a party to this proceeding.

Three, disclosure can occur "to the extent required by order of a court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure, such court being authorized in the issuance of such order to give due consideration to congressional policy favoring the confidentiality of returns and return information as set forth in this title." 26 U.S.C. § 6103 (h) (4) (D). In a situation similar to the instant matter, the United States Court of Appeals for the District of Columbia analyzed this sub-section of 26 U.S.C. § 6103 (h) (4) and stated that:

> There may be contexts in which § 6103 (h) (4) (D)'s reference to the 'congressional policy favoring the confidentiality of returns' may take the form of raising Rule 16's materiality standard, but if so this is not one of them. **Here, the government claimed that the defendant caused false returns to be filed, and offered testimony of taxpayers to support its view that the falsity was the responsibility of the preparer. The taxpayers' interest in the confidentiality of otherwise material prior-year returns seems trivial in the circumstances.** In this context, then, we understand § 6103 (h) (4) (D)'s injunction to consider confidentiality to be limited to such remedies as redacting portions that are plainly immaterial and especially sensitive.

United States v. Lloyd, 992 F.2d 348, 352 (D.C. Cir. 1993).

Clearly, in the case before this Honorable Court, the Defendant cannot prepare for an evidentiary "sentencing trial" on the "relevant conduct" allegations without, at a minimum, receiving copies of the tax returns which were supposedly audited by the

IRS and entered into some database that was then reviewed by the case agent. Nevertheless, the Government's attempt to avoid providing discovery and meeting its due process obligations to the Defendant based on an assertion that 26 U.S.C. § 6103 (a) prohibits such disclosure is contrary to the law as set-forth in that statute.

Similarly, the Government's attempt to characterize the materials requested in discovery by the Defendant as "work product" is futile and contrary to law. "The work-product doctrine, first recognized by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), 'shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" In re Grand Jury, 138 F.3d 978, 981 (3d Cir. 1998) (quoting United States v. Nobles, 422 U.S. 225, 238 (1975)). "This protection also can extend to materials prepared by an attorney's agent, if that agent acts at the attorney's direction in creating such documents." Id. "Unlike the attorney client privilege, however, which is absolute, the work-product privilege is qualified. The qualified privilege depends on the information being sought and the adversary's need for the information." United States v. Ernstoff, 183 F.R.D. 148, 154 (D.N.J. 1998). In the instant matter, some of the requested materials were prepared by the IRS while others may have been

generated by the case agent or other law enforcement agents as part of this investigation. Clearly, the IRS did not create audit documents at the request of the United States Attorney in this case and thus such documentation cannot be considered "work product". More importantly, the need for this information in this case outweighs the qualified work-product privilege because it is trumped by the Defendant's constitutional rights.

"The party asserting work product protection has the burden of demonstrating that the documents were 'prepared in anticipation of litigation.'" Id. at 155. "The mainstay of work product protection lies in the deceivingly simple phrase, 'in anticipation of litigation.'" Id. "To determine whether a document was 'prepared in anticipation of litigation,' the appropriate inquiry is 'whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" Id. (quoting Martin v. Bally's Park Place Hotel & Casino, 983 F.2d 1252, 1258 (3d Cir. 1993)). In the matter *sub judice*, the Government has not met its burden of demonstrating that any of the requested discovery materials were "prepared in anticipation of litigation" for purposes of properly asserting the work-product privilege.

In the event that this Honorable Court refuses to order specific performance of the guilty plea contract as discussed

herein above, the Defendant intends to litigate each and every aspect of the "relevant conduct" allegations as if in a bench trial before this Court. In order to preserve Robert Trauffer's due process rights in this regard, the Government must provide all of the discovery and *Jencks* materials previously requested by the Defendant, otherwise Mr. Trauffer cannot prepare for this critical sentencing litigation. Given that the Government has ignored its obligations to provide discovery in support of the "relevant conduct" allegations and because it refuses to recognize its legal obligations in this regard, the Defendant respectfully requests that this Honorable Court preclude the introduction of any "relevant conduct" evidence at sentencing based upon the Government's discovery violations and actions that have been intentionally designed to deprive the Defendant of due process of law as guaranteed to him by the Fifth Amendment to the United States Constitution.

## CONCLUSION

For all of the reasons set-forth above, the Defendant respectfully requests that this Honorable Court preclude the introduction of, or any reference to, "relevant conduct" evidence at the time of sentencing based upon the Government's breach of the guilty plea agreement and its blatant bad faith in this case. In addition, the aforementioned evidence should be excluded from consideration at sentencing based upon the Government's failure to provide the Defendant with necessary discovery materials relating to the alleged "relevant conduct" information in its possession.

RESPECTFULLY SUBMITTED:

SIGNATURE CODE: MJE5849
MICHAEL J. ENGLE, ESQUIRE
ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I, MICHAEL J. ENGLE, ESQUIRE, HEREBY CERTIFY THAT I HAVE FORWARDED BY REGULAR MAIL, A TRUE AND CORRECT COPY OF THE FOREGOING MOTION AND MEMORANDUM TO THE FOLLOWING PERSONS:

HONORABLE CYNTHIA M. RUFE
ROOM 4000
U.S. COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PA 19106

MICHELLE MORGAN-KELLY, AUSA
615 CHESTNUT STREET
SUITE 1250
PHILADELPHIA, PA 19106

SIGNATURE CODE: MJE5849
MICHAEL J. ENGLE, ESQUIRE
ATTORNEY FOR DEFENDANT
123 S. BROAD STREET
SUITE 1812
PHILADELPHIA, PA 19109

DATED: NOVEMBER 30, 2009