**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **Criminal No. 08-167** |
| **ROBERT TRAUFFER** | **:** | |

**ORDER**

______AND NOW, this _____ day of December, 2009, upon consideration of the Defendant's Motion to Preclude Consideration of "Relevant Conduct" Evidence, and the government's response thereto, it is hereby ORDERED that Defendant's Motion to Preclude Consideration of "Relevant Conduct" Evidence is DENIED.

BY THE COURT:

________________________________
HONORABLE CYNTHIA M. RUFE
United States District Court Judge

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **Criminal No. 08-167** |
| **ROBERT TRAUFFER** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO PRECLUDE CONSIDERATION OF "RELEVANT CONDUCT" EVIDENCE**

The United States, by and through its undersigned counsel, Michael L. Levy, United States Attorney for the Eastern District of Pennsylvania, and Michelle Morgan-Kelly, Assistant United States Attorney for the District, hereby responds to defendant's motion to preclude consideration of "relevant conduct" evidence. Because the government has neither breached the Plea Agreement nor acted in bad faith, defendant's motion should be denied.

## I. BACKGROUND

Defendant was charged on March 25, 2008 with four counts of income tax evasion and 34 counts of filing false income tax returns on behalf of the clients of his tax preparation business. As discussed between the government and defense counsel at the time, the clients whose returns formed the basis of the 34 counts were only a portion of the clients for whom defendant had prepared false returns; at the time of the indictment, their audits had been completed. See Def. Exh. A. The government circulated a plea agreement to the defense which contemplated a Sentencing Guidelines range based on that portion of the clients, which led to a loss amount of less than $200,000 under U.S.S.G. §§ 2T1.4 and 2T4.1. See Def. Exh. B. Thus,

the government stipulated in the Plea Agreement to a base offense level of 16 based on a loss amount of more than $80,000 but less than $200,000.[1] Id. ¶ 9. The Criminal Investigative Division of the IRS continued receiving the results of its Civil Division's audits in the ordinary course of business after defendant had been indicted, which included the results of audits of many of defendant's other clients. Defendant entered his plea on February 2, 2009.

In the draft Presentence Report ("PSR") circulated on April 13, 2009, the Probation Office indicated that it had been "advised by the IRS that there may be additional relevant conduct tax loss relating to the defendant's counts of conviction" that could potentially alter the tax loss amount and the guideline calculation. Draft PSR ¶ 22 n.2. The government confirmed this fact when it submitted its objections to the PSR ten days later. See Def. Exh. D. Based upon relevant conduct loss amounts provided by the IRS, see Def. Exh. J., the Probation Office adjusted defendant's base offense level to 20 rather than the level 16 agreed to by the parties. Final PSR ¶ 23.

Defendant then accused the government of breaching the plea agreement in "bad faith" and made a broad discovery request to the government. See Def. Exh. E. The government responded that it had exercised its incumbent duty of candor, and had acted entirely consistently with the Plea Agreement. The government also reassured defendant that it would recommend a sentence within the Guidelines range corresponding to the offense level stipulated by the parties in the Plea Agreement. See Def. Exh. F. Dissatisfied with this response, defendant then requested, among other things, discovery in the form of a chart provided to the Probation Office

---

[1] The plea agreement included an additional 2 points because defendant was in the business of preparing taxes, for a resulting total offense level of 18.

by the case agent summarizing the relevant conduct amounts, the names and contact information for all taxpayers in question, "all documentation generated or used by the IRS when auditing the aforementioned tax payers," the identification of any cases outside the scope of those in the indictment that already had been audited at the time of the indictment, all interview reports of the relevant taxpayers, "all documents and reports generated by the IRS case agent, or any other federal agent working on this case" pertaining to anything after the date of the indictment, and all documents pertaining to the collection of delinquent taxes from the relevant taxpayers. See Def. Exh. G. In response, the government provided the latest version of IRS Special Agent ("SA") Paul Schnaufer's summary chart,[2] stated the basis of the information used by SA Schnaufer to prepare his chart, and indicated that SA Schnaufer and/or other IRS representatives could be cross-examined at sentencing. The chart included the names of the auditors and the dates of the audits. The government indicated that it considered "all documentation generated or used by the IRS" to conduct the audits to be work product and/or non-discoverable under 26 U.S.C. § 6103(a), and stated that defendant had provided no authority to the contrary. See Def. Exh. H. In response to defendant's request for taxpayer interviews as alleged Jencks Act material, the government responded that no taxpayers would be called to testify as witnesses at sentencing. Id. Finally, the government responded that defendant's request for all documents and reports generated by agents on any investigation following indictment was too broad and vague, and also implicated the work product docrine. Id. The government agreed to provide information on delinquent taxes owed by relevant conduct taxpayers. Id.

---

[2] This was provided on June 1, 2009; a more recent, finalized version was provided on November 27, 2009. See Def. Exhs. I, J.

Five months later, defendant filed the instant 31-page Motion to Preclude Consideration of "Relevant Conduct " Evidence. Defendant remains out of custody pending sentencing.

## II. ARGUMENT

### A. THE GOVERNMENT DID NOT BREACH THE PLEA AGREEMENT OR ACT IN BAD FAITH.

In response to the government providing truthful information to the Probation Office about defendant's relevant criminal conduct in this case, defendant has filed the instant motion, in which he argues that the government, in bad faith, breached the plea agreement. Def. Br. at 9. As a remedy, defendant asserts that he does not wish to withdraw his guilty plea, but rather, seeks specific performance of the agreement. Id. at 10.

Defendant's assertions are both erroneous and premature. Defendant need not seek specific performance of the plea agreement because it already is occurring, and has been from the outset. The government plainly stated in response to defendant's first round of accusations in May 2009 that it "fully intends to abide by the terms of the plea agreement and to recommend a sentence within the Guidelines range corresponding to the offense level stipulated by the parties based upon the stipulated tax loss." Def. Exh. F.

Defendant points to two Third Circuit cases in support of his argument, both of which are inapposite, as they each involve the government stipulating to a specific offense level in the plea agreement, and then advocating in support of a higher offense level at sentencing. That simply is not the case here, as there has been no sentencing proceeding or pleadings filed by the government in support of sentencing, the government has yet to take a position on what

defendant's sentence should be, let alone one that is inconsistent with the Plea Agreement, and the government has repeatedly indicated its intention to recommend a sentence consistent with the Plea Agreement. Therefore, both of the cases cited by defendant are irrelevant. See United States v. Shelton, 2004 WL 628861 (3d Cir. 2004) (government advocated base offense level at sentencing that was six levels higher than level to which it had stipulated in plea agreement); United States v. Rivera, 357 F.3d 290, 292 (3d Cir. 2004) (government at sentencing endorsed four-point enhancement in PSR leading to higher offense level, after stipulating to lower level in plea agreement). Tellingly, the government has not located any case in which the government was found in breach of a plea agreement for providing truthful information to the Probation Office and advocating for a sentence as stipulated in the plea agreement.__

Indeed, the government has made far less use of this information than it is permitted to do under the express terms of this Plea Agreement. There is no limitation in the Plea Agreement on the use of relevant conduct. Rather, as set forth in paragraph 9, in addition to the stipulated offense level, it was "understood and agreed that: (1) the parties are free to argue the applicability of any other provision of the Sentencing Guidelines, including offense conduct, offense characteristics, criminal history, adjustments and departures." Def. Exh. B at ¶ 9. The Plea Agreement also states in paragraph 6(c) that the government will "[c]omment on the evidence and circumstances of the case; bring to the Court's attention all facts relevant to sentencing including evidence relating to . . . the character and any criminal conduct of the defendant; [and] address the Court regarding the nature and seriousness of the offense." See Def. Exh. B. at ¶ 6(c). Seeking to avoid the obvious import of these provisions, to which he explicitly agreed, defendant unconvincingly dismisses this language out of hand as "general" and

"ambiguous." Apparently, defendant wants the Court to apply the principle of the benefit of the bargain only to the extent that it benefits him.

Defendant dismisses the government's duty of candor as a "feigned ethical argument." In alleging that the government is "feign[ing]" an ethical obligation, defendant cites a non-precedential case from the Tenth Circuit, United States v. Cooper, 70 F.3d 563 (10th Cir. 1995). Once again, however, defendant has cited an inapposite case in which the government was held in breach of the plea agreement because - - unlike here - - it advocated at sentencing for a higher offense level than the one to which it had agreed in the plea agreement. Id. at 565 (government breached the plea where it "took the position that the proper offense level was 14 . . . rather than the offense level of 5 suggested by the government in the plea agreement."). This simply is not the situation in the case at bar; here, there has been no sentencing proceeding, and the government intends to advocate for the offense level agreed to in the plea agreement. Cooper is instructive to this Court only in that it distinguishes United States v. Jimenez, 928 F.2d 356, 364 (10th Cir. 1991), where the government presented relevant conduct information, yet advocated the sentence set forth in the plea agreement, and was found to not have breached the plea agreement.

Stripped of hyperbole, the instant situation is no different from myriad cases that undoubtedly have come before the Court in which the parties stipulated to a certain offense level in the plea agreement and the Probation Office calculated a higher offense level based on relevant conduct. Ultimately, post-Booker, the Court has the discretion in every case to give whatever weight it sees fit to relevant conduct, including disregarding it in its entirety, and to sentence as it deems appropriate, including consistently with the recommendation of the parties

in the plea agreement. Given the mandate of Section 3553(a) that the Court shall consider the nature of the offense and the history and characteristics of the defendant, there would be no basis for secreting from the Probation Office information about defendant's conduct relevant to the offense with which he is charged, his history, and his characteristics.

**B. THE DEFENDANT'S DISCOVERY REQUESTS ARE MOOT.**

Given the government's intention from the inception of this dispute to abide by the terms of the Plea Agreement and argue for a sentence consistent with the stipulated offense level in the Plea Agreement, and in an abundance of caution, the government will not offer any evidence at sentencing relating to relevant conduct. Accordingly, defendant's discovery requests are moot.

## III. CONCLUSION

For the reasons set forth above, the government respectfully requests that defendant's Motion to Preclude Consideration of "Relevant Conduct" Evidence be denied.

MICHAEL L. LEVY
United States Attorney

/s/
RICHARD BARRETT
Assistant United States Attorney
Chief, Tax and Corruption Section

/s/
MICHELLE MORGAN-KELLY
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I certify that on this day I caused a copy of the Government's Response to Defendant's Motion to Preclude Consideration of "Relevant Conduct" Evidence to be served by electronic filing, and/or facsimile, addressed to:

Michael Engle, Esq.
123 South Broad Street
Suite 1812
Philadelphia, PA 19109

/s/
MICHELLE MORGAN-KELLY
Assistant United States Attorney

Dated: December 11, 2009