IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

\- - -

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO. 08-167-1 |
| v | : |
| ROBERT TRAUFFER, | : Philadelphia, Pennsylvania |
| | : February 16, 2010 |
| Defendant | : 10:30 a.m. |

\- - -

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE CYNTHIA M. RUFE
UNITED STATES DISTRICT JUDGE

\- - -

APPEARANCES:

For the Government: MICHELLE MORGAN-KELLY, ESQUIRE
Assistant United States Attorneys
United States Attorney's Office
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

For the Defendant: MICHAEL J. ENGLE, ESQUIRE
123 South Broad Street
Suite 1812
Philadelphia, PA 19109

Probation Officer: Robert Hassinger
United States Probation Office
Suite 2400
600 Arch Street
Philadelphia, PA 19106

*Transcribers Limited*
*17 Rickland Drive*
*Sewell, NJ 08080*
*856-589-6100 • 856-589-9005*

Audio Operator: Erica Pratt

Transcribed By: Michael Keating

- - -

Proceedings recorded by For The Record; transcript produced by computer-aided transcription service.

- - -

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

(The following was heard in open court at 10:30 a.m.)

THE COURT: I see that I'm probably the only one that needed the extra time, but I hope everyone traveled safely. Are we ready to continue the sentencing of Mr. Trauffer, counsel?

MS. MORGAN-KELLY: Yes, Your Honor.

MR. ENGLE: Yes, Your Honor, good morning.

THE COURT: Good morning, very well. Then we will again ask Mr. Trauffer to rise and be sworn in.

ROBERT TRAUFFER, Defendant, Sworn.

COURTROOM DEPUTY: Please state your full name for the record.

THE DEFENDANT: Robert Trauffer.

THE COURT: Good morning, Mr. Trauffer.

THE DEFENDANT: Good morning.

THE COURT: Please be seated.

THE DEFENDANT: Thank you.

THE COURT: I think I asked this question of you before, but we are going to do it again because we have a revised presentence report and I would like to know if you have had the opportunity to review the one that was revised after our last hearing.

THE DEFENDANT: Yes I have, Your Honor.

THE COURT: Okay. For the record that is the

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

date of the second revision of January 5th, 2010. Did you review that with your attorney?

THE DEFENDANT: Yes I did.

THE COURT: All right. Did you actually read it, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Very well. Well, I'm not a sir, but did you read it?

THE DEFENDANT: Yes.

THE COURT: Okay. Then may I ask counsel if there are any new objections, corrections, modifications, deletions, or the like?

MS. MORGAN-KELLY: None from the government, Your Honor.

MR. ENGLE: None from the defense, Your Honor.

THE COURT: Then we will adopt the facts as they are presented in the final revised version of January 5th, 2010 and proceed with the rest of the plea.

I'm going to turn first to the government and ask if you have any additional evidence to present?

MS. MORGAN-KELLY: No we do not, Your Honor.

THE COURT: All right. But you will reserve a right to argue?

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

MS. MORGAN-KELLY: Yes, thank you.

THE COURT: Sure. Then Mr. Engle, what would you like to present on behalf of your client, and that is to assist the Court in determining a fair and reasonable sentence under the sentencing statute today?

MR. ENGLE: Thank you, Your Honor. I trust that the Court has received my sentencing memorandum with attachments Exhibits A through I.

THE COURT: Many attachments.

MR. ENGLE: Yes, many attachments.

THE COURT: It seems like more than that, but yes we have received it.

MR. ENGLE: It is only A through I.

THE COURT: As well as the government's sentencing memorandum.

MR. ENGLE: At this time, Your Honor, I would ask that the defense sentencing memorandum and the attached exhibits collectively be marked as Defense Exhibit 1 and moved into evidence.

THE COURT: Any objection?

MS. MORGAN-KELLY: No, Your Honor.

THE COURT: All right. D-1 will be admitted into evidence.

(Defense Exhibit 1, documents, are admitted into evidence.)

FORM 2094 ® PENGAD • 1-800-631-6989 • www.pengad.com

MR. ENGLE: In addition, Your Honor, as I've set forth in the sentencing memorandum, there are a number of issues that I would like to address with the Court now if Your Honor would permit relating to issues of urinalysis under 18 USC Section 3553(a) factors and issues that the Court may wish to consider for purposes of a downward variance in connection with this case from the advisory sentencing guideline range that has been calculated in the presentence report.

During the course of that presentation, Your Honor, if that is okay I have two brief witnesses to present.

THE COURT: You may proceed.

MR. ENGLE: Thank you. Your Honor, we are here today and one of the first questions we have to look at is what did this defendant do, what is this case about?

I know that Your Honor has to look at the nature and circumstances of this particular case. What we know is that Mr. Trauffer is here because of two different related, but separate courses of conduct.

The first relates to his dealing with his own personal tax return issues for the years of 2001 through 2004. Over those four tax years, Your Honor, it has been established that Mr. Trauffer under

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

reported a hundred thirty-six thousand eight hundred and fifty-one dollars in income that should have been provided to the IRS.

If you break that down by an average of the course of the four years, we are looking at a little bit more than thirty-four thousand dollars if you averaged it out over each of those years.

We know that Mr. Trauffer was not reporting all of his gross income and, therefore, that is what directly impacted the calculation of his taxable income during those four years.

In addition, Your Honor, the other thirty-four counts in the indictment relate to specific instances that are where Mr. Trauffer was representing individual taxpayers and doing their tax preparation work and submitting their tax returns to the IRS. That occurred during the years 2002 to 2004. The loss there is fifty-two thousand four hundred and sixty-five dollars, which is you averaged it out over those thirty-four counts, Your Honor, it is approximately fifteen hundred and forty-three dollars per return if you were to average it.

What we know from both what is indicated in the presentence investigation report, the indictment and from the guilty plea hearing in this particular

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

case, is that we know that Mr. Trauffer was exaggerating amounts of money that his money could deduct for various things, in particular, charitable contributions and for reimbursement for work related expenditures.

We also know that a number of the clients that Mr. Trauffer was representing in his capacity as a tax preparer were police officers and fire fighters in the City of Philadelphia, Your Honor.

So, knowing all of that obviously the defendant recognizes exactly how serious this is. Mr. Trauffer has had a significant recognition very earlier on of exactly what he did and how significant it is, because not only did it impact his government, Your Honor, not only does it impact all of us and this society, but it directly impacts himself, his family who I know Your Honor has read the letters from the family and they are here in the courtroom today to support him. It affects his clients, so all people that have put their trust in him who love him, who support him, he has hurt them through this endeavor. I believe that you will hear from Mr. Trauffer's allocution exactly how he has come to fully recognize that.

But, I know one of the other things that Your

FORM 2094 ⊛ PENGAD • 1-800-631-6989 • www.pengad.com

Honor has to consider is the big question of why? Why did this happen? How did a man like Robert Trauffer, and we see all of the issues related to his background, his upbringing, his education, his work, how did this man end up here in front of you, because there is no way Robert Trauffer should be here today, Your Honor. So that why question I know must loom large for the Court.

This is where I have to agree with the government's assertion in its sentencing memorandum. The reason he is here is because of greed. It is about greed.

Mr. Trauffer during a period of years at a point in his life adopted what I call the Gordon Gecko philosophy of life, if you remember the movie Wall Street where Mr. Gecko is giving that speech to shareholders at a meeting where he says greed is good, greed is right and greed works.

Well, for a period of time in his life this man adopted that philosophy. He adopted that mistaken belief that many individuals in this country believe is that money equates to power, to self-worth, to importance to status.

I know, Your Honor, I make that mistake in life at times, too, where thinking that the more money

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

I can make as an attorney the more important I am somehow. It is an easy trap to fall into, but it is a bad and a very dangerous trap as Mr. Trauffer has learned the hard way.

THE COURT: Mr. Engle, I think you don't mean that entirely, it is how you make the money that is the trap.

MR. ENGLE: Of course. Of course.

THE COURT: Because there is nothing wrong and our country was founded on the ability and desire and legal ability that is to make money. We're in a capitalist society which has worked for the most part, so we won't comment on anything more because it might smack of a political statement, but there is nothing wrong with wanting to make more money.

MR. ENGLE: No.

THE COURT: It is how we do it.

MR. ENGLE: It is short cutting in trying to get more and thinking that is what is important. That is where the greed aspect comes in, there is nothing wrong with being successful, of course, Your Honor.

But, it is where Mr. Trauffer decided to start short cutting the system and doing things in order to enhance that for himself where he really didn't need to, there was no point to it, Your Honor.

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

That is something that he has not adopted throughout the entire course of his life and that I would submit to Your Honor that since the time of 2005 when confronted with these issues, that he has worked very hard to change over time and those are some of the things that I would like to talk about now.

First of all, Mr. Trauffer has significantly worked to change his attitudes and his outlook toward money and the importance of it in his life. He has changed not only his personal practices and beliefs relating to that, but has changed his business practices in order to insure that what happened before will not happen again.

Some of the examples of things are instead of just talking to a client on the phone and gathering information without any substantiation without any documentation to support it, he makes sure now, and there is an example of the engagement letter that he has been using since 2005. I believe I submitted the 2008 version to Your Honor.

THE COURT: Right.

MR. ENGLE: That shows that the instructions he is giving his client, the requirement that they provide all documentation before he would ever take a deduction for any individual in the future, making sure

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

that all cash payments made to his business are logged in so that they can be accurately recorded and the IRS can know exactly how much money that he has made under those circumstances including a log of all deposits going into his business account. Making sure that everything is documented and accounted for so that these mistakes do not happen ever again.

In addition to that he has worked very hard to recommit himself to his family, to his church, and to his community through various charitable and volunteer related activities, Your Honor.

The first issue that I would point to would be the issue of what has the defendant done since being confronted with his crimes in 2005 to try and change himself, that aspect of self-correction that we all look for from an individual in this situation to say do they understand the significance of this, and what are they going to do to make sure it doesn't happen in the future.

The first thing I would do is call Your Honor's attention to this man's true character, who he is really at his core, Your Honor. There are approximately fifty-seven character letters that were submitted from family, from friends, and from clients of Mr. Trauffer speaking to who he is, who he has been

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

in their life and the impact that he has had on them as family, friend, and client.

I know that Your Honor has taken the time to read all of those and some of them are very touching and very moving and, I think, speak to the true nature of who this man is in his heart.

At this time if Your Honor would allow, I'd like to ask members of the gallery, how many people here if you would stand up are currently clients of Mr. Trauffer, who use him for accounting work and tax preparation work?

These are all individuals who knowing the situation that Mr. Trauffer is in continue to support him and continue to use his services and are here today to support him, Your Honor. Thank you, ladies and gentlemen.

If I can ask how many individuals who are members of law enforcement are here today, if you could stand up in support of Mr. Trauffer. Your Honor, we have a special agent from the DEA who wrote a letter, we also have members of the Philadelphia Police Department who are here, who are clients who also support Mr. Trauffer. Thank you, gentlemen.

We also have many friends and family in the audience and at this time, Your Honor, if you would

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

permit I would like to call one of Mr. Trauffer's lifelong friends, Joseph Curcillo.

THE COURT: All right. Please come forward, sir, to the center podium.

JOSEPH CURCILLO, Defendant's Witness, Sworn.

COURTROOM DEPUTY: Please state your full name and spell your last name for the record.

MR. CURCILLO: Joseph A. Curcillo, C-U-R-C-I-L-L-O.

THE COURT: Good morning.

MR. CURCILLO: Good morning.

MR. ENGLE: May I proceed, Your Honor?

THE COURT: Please.

MR. ENGLE: Mr. Curcillo, what do you do for a living?

MR. CURCILLO: I am a criminal defense lawyer from Harrisburg, Pennsylvania.

MR. ENGLE: Do you know Robert Trauffer?

MR. CURCILLO: Yes, I do.

MR. ENGLE: How long have you known him?

MR. CURCILLO: I've known Bob for forty-two years since we were in first grade.

MR. ENGLE: Do you consider him to be a friend?

MR. CURCILLO: Yes, I do.

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

MR. ENGLE: All right. Can you tell Her Honor about what you know of your friend, of his character and the true nature of this individual as you have experienced over all of these years?

MR. CURCILLO: Absolutely.

MR. ENGLE: Thank you.

MR. CURCILLO: Your Honor, if I may, as I stand here and I answer that I have known Robert for forty-two years, I think back to several years ago I appeared in front of you with a client that I had only known for two and a half years, and in my career I never expected to stand in front of a judge and say that I know the defendant for forty-two years.

I came in this morning on behalf of Bob because throughout our lives he is somebody who has always been there when he was needed, and never in the way when he wasn't if you understand my point. He was always a good friend.

When he first told me about what was going on in this, I'm not sure which was more disturbing, the stress in his face of having to admit to me the situation that he was in, or the stress in my face of trying to comprehend that my best friend for life had done something that I had represented people on.

I looked at it and I realized that Bob was

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

recognizing over and over again with each word that he spoke the wrong that he did, and I realized that it wasn't him, that something had to have been different.

I want to say its funny, I was just to comment I want to jump ahead to this morning, I'm downstairs, I went to get an iced tea at the snack bar and its funny, but I put the iced tea on the counter and went to go pay for it and as fast as I was going to pay for it Bob pulled out a dollar or two to pay for it for me, and I looked it him and it was like oh, my God, that is my best friend back again, the guy that I always knew was going to be behind me, and that's Bob.

That is the man that is sitting in front of you today who has learned, I believe, very well from what he has been through, has worked extremely hard to change things.

Another example of how this situation is not Bob or that it's evidence that it's not Bob. Last night I was sitting in my house and I had not told my wife or my two daughters that I was coming here to Bob's sentencing and it was interesting.

You might be able to appreciate the moment as I explained to them what I was coming here for and what was going on. My daughters looked and me and then looked at their mother immediately for her reaction and

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

their mother who was twenty-three years a prosecutor and is now a Common Pleas Court judge just sat there and looked at my daughters and said if dad says its okay, it is okay. They looked at me and they smiled and they said but dad, it is Bob, he is not like that, I said no he is not, and he wasn't and maybe for a time he was.

But, I think that over the last five years I would say that my friend, Robert, has served one heck of a sentence in going through this process and has worked extremely hard to get around it, and I would tell you that I would throw my life and my body in front of this man to save his life. Thank you.

THE COURT: Thank you, Mr. Curcillo.

MR. CURCILLO: Thank you, ma'am.

MR. ENGLE: Thank you, Mr. Curcillo.

THE COURT: Were there any questions from the prosecution?

MS. MORGAN-KELLY: No, Your Honor, thank you.

THE COURT: Thank you.

MR. ENGLE: If I may call the defendant's wife, Debbie Trauffer.

DEBORAH TRAUFFER, Defendant's Witness, Sworn.

COURTROOM DEPUTY: Please state your full name for the record.

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

MRS. TRAUFFER: Deborah Anne Trauffer.

THE COURT: Good morning.

MRS. TRAUFFER: Good morning.

MR. ENGLE: May I proceed, Your Honor?

THE COURT: Please.

MR. ENGLE: Mrs. Trauffer, obviously you know the defendant. How long have you known Robert?

MRS. TRAUFFER: Over twenty years.

MR. ENGLE: How long have you been married?

MRS. TRAUFFER: Since 1995.

MR. ENGLE: Okay. Your Honor, Mrs. Trauffer did not submit a letter to the Court because I had asked her to say a few words to Your Honor, so I will ask her at this time if there is anything that you can tell Her Honor about the nature and character of your husband that you would like this Court to know before Her Honor imposes sentence.

MRS. TRAUFFER: Okay. Thank you, Your Honor. I more than anybody know that Bob has changed over the past five years. He has done some major soul searching to determine the cause of his behavior. He has cried many times in my arms, scared and remorseful for his wrongdoings.

He has asked himself over and over again what was I thinking. He threw away everything he worked so

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

hard for and had accomplished for money. He felt that money was more important and he thought he would be happier and he thought he would be more secure.

I want to thank the IRS for stopping his path of greed and helping him realize that the most important things in life are not money or things. Bob has learned and grown professionally from his experience.

He has renewed his spiritual faith, he has confessed his sins, he has asked God for forgiveness and restoration and he has vowed never to make this mistake again. He has opened his heart and helping hands to teach others the priceless meaning and importance of honesty, integrity, trust, freedom, and gratitude.

Bob has been living the fundamental principles of free masonry and taking the time to serve others without expecting anything in return. He has voluntarily assisted with manual labor to prepare homes for low income housing family.

He has volunteered at a summer camp for underprivileged children. He has supplied food for the local food bank in Phoenixville, and he cooks meals and helps with farm work for a chronically ill neighbor, Bill, and he serves as the main care giver for his

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

parents.

He has also supported me in the role reversal of being the primary provider for our family now that the doors of employment in the health care field have closed for him.

He is working very hard to rebuild his life and money is no longer his primary focus. I truly believe that Bob has changed. Our relationship has grown stronger as a result of this change, and I am proud of the progress that he has made in transforming his life's purpose. I hope and pray that you can see these changes too.

I am asking you from the bottom of my heart, from myself, Bob's children, our parents, our friends, our clients, and the community that he serves for leniency in your sentencing. Thank you.

THE COURT: Thank you. Any questions from the government?

MS. MORGAN-KELLY: No, thank you, Your Honor.

THE COURT: Thank you.

MR. ENGLE: Thank you, Your Honor. In addition to these testimonials as to Mr. Trauffer's character, Your Honor, obviously he has strong family support.

His parents are here, his children are here,

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

brother, sisters, brother-in-law, et cetera, there are many family members here who love and support him and I believe that has been clearly attested to in the letters that they have written to Your Honor.

We are also looking at a man, Your Honor, with no prior criminal record, no prior contacts with the criminal justice system at any time, who up to this point in time, this period from 2001 through 2004 had not had any encounters with our system, an individual who was law-abiding in nature, an individual who was following the rules and doing things the right way.

I would submit to you that truly at his core, that Mr. Trauffer is and wants to be only a law-abiding citizen, but he did something seriously wrong here, a serious departure from the path that his life had taken all the way up to that point.

But, I would also submit to Your Honor, that since 2005 he has worked to get himself back on that path. Getting himself back to where he had been before he stepped off the road of being a productive and a law-abiding member of our society.

This is an individual who while, of course, the guidelines wouldn't consider the concept of aberrant behavior, but in terms of looking at the totality of the circumstances of an individual's life

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

in the way that he has conducted himself both before and after this situation, Your Honor, that I would suggest, Your Honor, that what happened here is an aberration, not true Robert Trauffer, that was not him being true to himself.

This is an individual who when looking at all other aspects and phases of his life represents a truly good man, a man who certainly can be rehabilitated and who has worked to rehabilitate himself and an individual who will never come back into a situation like this again in the future, Your Honor.

The defendant is truly remorseful and as the presentence investigation notes at paragraph eighteen that he has expressed acceptance of responsibility and as Mr. Hassinger notes, that at no time did Mr. Trauffer seek to minimize the nature or seriousness of his conduct, and I believe that you will experience that true remorse from him when you hear him speak in his allocution, Your Honor.

Obviously this man has committed himself to his family, he takes care of his elderly parents, he helps with his sister who suffers from multiple sclerosis, and her letter to the Court indicating about how he has been her patient advocate for all of these years.

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

The situation where you may have read his brother-in-law and his nephew's letters to the Court, both Tom and Christopher Wolf indicating that at a moments notice, when this young man, his nephew needed someone, needed parents to step in, people to step into the role of parent and take him in at one of the darkest hours in his young life, Mr. Trauffer and his wife stepped up to the plate immediately and took this young man in.

His words I think suggest exactly what kind of person Robert Trauffer is, and how he is committed to family and that he will put himself out there for others, because I would suggest to this Court that not many people would be as willing to do that type of thing, to take in someone else's child and treat them as your own, that is a difficult thing to do, but yet Mr. Trauffer did it willingly and without hesitation.

He has been committed to all aspects of his family life. He has also been very committed to his church, and he has rededicated himself to his faith, Your Honor, as his wife has mentioned to you.

He is a regular attendee at Calvary Church in Downingtown, he also is involved in a number of charitable and volunteer activities through the church, one of which as I mentioned in the sentencing

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

memorandum is that he has been giving of his time to underprivileged children in the Coatesville area by volunteering at a camp that is sponsored through the church.

He has been doing other things through the church that is about giving back to others, about being selfless as opposed to selfish, because if you can say anything about the nature of his crimes, they were about being selfish, they were about being self-centered, about greed. That is not part of being a selfless giving individual. But, he is working now to give back, to be that selfless and giving individual again, Your Honor.

Not only is he doing that but he has worked hard for the Mary-Kate Legacy Foundation, I don't know if Mr. Tom Marlow or his brother are present in the courtroom, Your Honor.

Mr. Marlow also wrote a letter explaining about how Mr. Trauffer has giving of his time and talents to help them establish and maintain this very important charitable foundation.

He has worked for the Ted Lindeman's Foundation in the same way. In the same capacity, he has worked to establish the Assist Program, which is designed to help injured police and firefighters in

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

this City.

This is a man who has given of his time and talents in an effort to try and help others, and I would respectfully submit to Your Honor that that shows a positive track, a track away from where he was before and towards the right path, towards the path of being that law-abiding citizen, Your Honor.

In addition, Mr. Trauffer has acted to become certified through the IRS's VITA or TCE program, so that through his church he is able to go out and provide indigent individuals in the Coatesville area with tax services, people who would not be able to have their tax returns done who can't afford to go and have someone prepare their tax returns for them, that he is a volunteer individual to provide those services to indigent people in his community.

In addition, Your Honor, I would point to another aspect that I think speaks to Mr. Trauffer's true acceptance of responsibility, and that what we look for in that turning of a corner with respect to where he was and where he is today.

As I mentioned in the sentencing memorandum, Mr. Trauffer opted to make good faith efforts and tried to provide substantial assistance or cooperation to the government in connection with a number of different

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

matters.

As I submitted in Exhibit C of the defendant's sentencing memorandum, you see the nature of the information that Mr. Trauffer had prepared, that he was presenting to the government relating to issues of potential medicare fraud, potential over billing issues and the like.

Now, granted, this information did not lead to a criminal investigation and may have been deemed more civil in nature or just couldn't be used by the government. Nevertheless, Mr. Trauffer acted to make that step to provide that assistance to the government.

Of course, one could say it is really easy to sit down with the government because you may be looking to get a downward departure, and you may be looking to benefit yourself and that is a self-serving thing, and it doesn't cost you anything to sit down and talk.

But, that is not exactly true in this particular instance, Your Honor, because as you know Mr. Trauffer had been employed at Frankford Hospital and he has lost that employment as a result of his crimes.

So, at that point he was presented with a severance package and a copy of that is Exhibit B. What the severance package indicated is that he would

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

have to basically keep his mouth shut about any issues relating to Frankford Hospital, and if he did he got a nice severance package, something in the neighborhood in excess of sixty thousand dollars he would have received from Frankford Hospital.

So, he had to make a choice at a certain point in time, Your Honor, where it was was it better to accept the severance agreement and pocket the sixty thousand dollars, or was it better to forego that and attempt to assist the government.

Mr. Trauffer made that choice of trying to sit down and do something that would help the government. Here, certainly the government is a victim in this case.

So, he wanted to do something to try and do something to help the government to restore their faith in him perhaps. But, it came at a cost and a choice, is money more important to you, or is doing the right thing more important to you? Mr. Trauffer chose what I would suggest is the right path, not choosing money over that opportunity.

There is also other instances of what we would call post defense rehabilitation as I mentioned in the sentencing memorandum, what we would in our pre-advisory guideline days where they were mandatory,

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

a Sally departure, Your Honor, in looking at extraordinary acts or things that are not the norm that show that has this person turned the corner and started to rehabilitate themselves after the time of the offense. Have they gotten back on the right track.

Here one of the main issues obviously is restitution, and there was restitution due and owing to the government and that was made early and it was made completely by this defendant.

Now, it is certainly part of his guilty plea agreement, he is required to make that restitution to the IRS. But, here that plea agreement wasn't executed or entered into with the government until November 4th of 2008, Your Honor.

On May 15th, of 2008 Mr. Trauffer had already cut the check for the money for the restitution and I had provided it to the IRS as of May 29th, 2008, approximately six months before there was any final agreement with the government or plea negotiation or anything like that.

For the a hundred and thirty-six thousand eight hundred and fifty-one dollars that Mr. Trauffer owed, he had to pay back with penalties and interest three hundred fifteen thousand three hundred eighty-two dollars and fifty cents which was done

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

substantially before there was a plea agreement, before there was a guilty plea hearing, and certainly before sentencing in this matter, Your Honor.

But, more important than that, because Mr. Trauffer would certainly be required to do that after sentencing at some point in time as part of his plea agreement, it was going to be required any way.

But more important than just making sure that the government had their money back as early as possible, he took one step further, and the government talks in their sentencing memorandum about the issue of needed to protect the public.

If I may, Your Honor, at page seven of the government's sentencing memorandum they specifically talk about how this Court must protect the public and how many of the defendant's clients like the individuals who are here today in support of him, as a result of his actions were subjected to IRS audits and how to repay the IRS funds they unlawfully received.

"As evidence that this was a significant hardship, at the time of the indictment some of them were still on repayment plans years later. The defendant violated the trust that was placed in him by members of the public and the public should be furthered protected from his crimes."

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

Well, Mr. Trauffer recognized that fact and recognized that fact early on in this process as well, Your Honor, that his clients did suffer as a result of his thoughtless and careless actions here, and he wanted to make that right.

Now, whether or not he could have been legally compelled to make restitution payments for these other taxpayers wasn't the issue because clearly that was their tax liability, they had the responsibility of paying that back.

But, as the government says, he put them in this position, so what did he do? He decided that he was going to make them whole by making sure that either they were reimbursed for the moneys that they had paid to the IRS or to make sure that payment went to the IRS on their behalf.

He tendered that fifty-two thousand four hundred and sixty-five dollars as voluntary restitution, and he did that as of November 18th, 2008, just two weeks after entering into the plea agreement with the government, Your Honor.

So, this is an individual who has prioritized making his victims whole. I would submit to this Court that is an important recognition on his part. That fixing the problem, going back and remedying the issue

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

that you created through your own criminal acts is a critical step in the rehabilitation process and towards showing this Court that this is an individual who understands the wrongfulness of his actions and the need to change his conduct in the future.

I would submit to Your Honor that this is a scenario now where Robert Trauffer has done things to demonstrate that money is no longer at the center of his life.

It no longer is what motivates him to get up in the morning. It is no longer what drives him to want to work and help others in his daily life. He doesn't believe that greed is good anymore, he doesn't believe that it works and he no longer believes that it is right.

This is a situation, Your Honor, where I would submit to you that when looking at the issue of fashioning a sentence where the Court is charged with looking to a sentence that is sufficient but not greater than necessary to bring about the four purposes of sentencing punishment in this country, I would ask Your Honor to strongly consider a non-incarceratory sentence for this individual because this is a man that gets it.

The light bulb went off. When he was

FORM 2094 ® PENGAD • 1-800-631-6989 • www.pengad.com

confronted with this, he realized he needed to change his life and he has taken the necessary steps to do so, to make society and to make the Court feel comfortable that he will never be back here again, that he will never make those mistakes again and that he is self-corrected in a significant and real way.

This is an individual who has been under court supervision through Pretrial Services for almost the last two years, since April of 2008 and as the presentence report indicates, he has followed all of the rules and worked to demonstrate that when rules are imposed by the Court system, he can and will follow them to the letter, which I would submit to the Court could give you some comfort zone in knowing that this is an individual who can follow supervision while being out in the community.

Just like we say that actions speak louder than words, beyond what this man is going to say to you in his allocution, I would submit that all of his actions in this particular case speak volumes about where he has come in the last five years and that they show that true change and that ability to be able to follow rules whether it be on probation or supervised release, or any kind of court supervised program, Your Honor.

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

As the statutes, the 28 USC Section 944(j) of the Sentencing Reform Act looks to the issue of considering for first time offenders that probation may be the right disposition for an individual.

I would submit that there is precedent for that scenario in this district in pointing to the decision of United States v. Howe, a 2008 decision by the Third Circuit looking into the analysis of Chief Judge Sleet in Delaware in departing or giving a downward variance from a guideline range of eighteen to twenty-four months, just like we have in this case, to a period of probation with three months of home confinement.

Speaking to all of those various factors that the Court found that were significant and those factors, Your Honor, are listed in my sentencing memorandum at page eighteen, where the Court found and the Third Circuit agreed, actually page nineteen, I'm sorry, Your Honor, that even in Howe where an individual had not accepted responsibility initially for his conduct, who went to trial and put the government through a jury trial in a wire fraud scheme where it was alleged that he spent two years then trying to affirmatively cover up that series of crimes, that even after all of that the Court found under those

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

circumstances that this was an isolated mistake, albeit an extraordinary serious one.

I would submit to you that this pattern of conduct that occurred from 2001 to 2004 was a serious mistake. It was an absolutely serious transgression by Mr. Trauffer, no question about it.

But, I would also submit to you that this was isolated in the sense of looking at the totality of his life and all of the other aspects of who he is as a person.

The Court in Howe also mentioned that the defendant had led an honorable and lawful life until the time of his crimes as attested to in over forty character letters.

I think we have a similar situation here where the character letters attest to the kind of life that this individual led both before and after the times of his offenses.

The Court in Howe also mentioned that the defendant had no prior history and no history of any substance abuse and we have that same scenario here, Your Honor.

The defendant was considered to be a well regarded member of his community, and I would submit to you that Robert Trauffer also is a well regarded member

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

of his community as demonstrated by the number of people that have come here today and those people who have written letters on his behalf.

In Howe the Court also mentioned that the defendant regularly attended church and participated in church activities. Mr. Trauffer regularly participates in church activities, is a faithful churchgoer and not only does he participate in those church activities, he also is involved in other volunteer and charitable activities.

The defendant recognized the serious nature of his offense and was truly remorseful, and as I said to you before, I believe that you will experience that from hearing my client speak to Your Honor.

Finally, the Court in Howe talked about how the defendant was a devoted husband, father, and son and I clearly would submit to this Court that Robert Trauffer is a devoted husband, father, son, brother, brother-in-law, et cetera, and I think we see that in the nature of how his family thinks about him and characterizes him in their letters, Your Honor.

So, I would submit to you that this is a case where a variance to a period of probation would or could be appropriate, Your Honor, under the totality of all of these factors in looking at the 3553(a)

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

analysis.

The last point I would like to make, Your Honor, is that the presentence report looks to the issue of whether or not in fashioning a sentence this Court would create a restriction from Mr. Trauffer participating in the professional activities that are related to his offenses.

Certainly there is no question that his professional activities as a tax preparer or an accountant was part of this process of his criminal activities, obviously.

But, in looking to that the guidelines at section 5(f)1.5 look to the issue of whether such a professional restriction should only be imposed if the Court determines that it is necessary to protect the public because there is reason to believe that absent such a restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

I would submit to you that doesn't exist here as demonstrated by Mr. Trauffer's conduct since 2005 in what he has done professionally, the change, his tax practices. How he has been under the watchful eye of the government and the IRS for the last five years, and has continued to do tax preparation work without any

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

issues.

How he is volunteering his time to indigent individuals in the community to do tax preparation work, and for the reason that, Your Honor, this individual needs to do something to give back to the community.

He needs to continue to support all of these clients that are here, all of these individuals who even knowing the situation that he is in still support him, still want him to be their tax preparer or accountant.

Now he has lost a high paying job at Frankford Hospital. His wife has now had to become the primary bread winner in this family. This has placed a greater burden on her, and a restriction of his professional abilities here would create an even greater burden on her.

THE COURT: Isn't he naturally restricted? What happens to his license?

MR. ENGLE: He will probably lose his CPA license, Your Honor, however, that doesn't impact his ability to do tax preparation and general accounting work. The CPA license and that do not go hand in hand.

So, the issue becomes would Your Honor restrict him from that work, or would you allow him to

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

continue to do that because over the last five years he has demonstrated that the community is safeguarded and that all of these different people, including members of law enforcement, submit him and continue to have him do their taxes and trust him. That is referenced in all of the letters.

He has lost things here, that is no question, he lost that job at Frankford Hospital, he lost out on the opportunity to continue to have a CPA license, that is going to be taken away from him, Your Honor.

So this is a situation where even if you are not looking to do this for Robert Trauffer himself, I would ask you on behalf of his wife that she is the one who the burden then rests on her for supporting this family financially. That is not fair to her because she is not the one who committed these offenses.

THE COURT: But, that applies in any sentence for any crime.

MR. ENGLE: Certainly.

THE COURT: It really can't govern here because the conduct is what places her in that situation, not the Court. It is Mr. Trauffer.

MR. ENGLE: Of course, and what I'm suggesting, Your Honor, is that he should be out there in order to work and to make a living in order to

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

support his family.

That is his job, that is what he should be doing and that is what he has been doing for the last five years. That is what he has been doing without issue for the last five years, that is what he has done to change those tax practices to make sure these problems will not happen again.

Given that course of conduct since 2005 I would respectfully submit to the Court that he has developed a track record and a level of trust that he can be trusted to do this work in the community.

I think it speaks volumes that the members of the community who use those services are here to support him, that even knowing what his crimes are, they still wish him to be their tax preparer, they still support him as a professional and as a friend.

Therefore, Your Honor, I would be asking you not only to consider the variance in this case with respect to a non-incarceratory sentence, but I would ask you not to impose a professional restriction on him during any period of probation or any period of supervised release.

THE COURT: Okay.

MR. ENGLE: Thank you, Your Honor.

THE COURT: Thank you. Now, would you like

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

to present your client?

MR. ENGLE: Yes, Your Honor. May we approach the podium?

THE COURT: Yes.

MR. ENGLE: Bob, you are under oath and this is your time to say whatever you have to say to Her Honor about the nature and circumstances of your offense and where you are today as a person.

THE DEFENDANT: Thank you, Your Honor, for allowing me to address the Court.

THE COURT: It is your right.

THE DEFENDANT: Thank you. This is probably the hardest thing that I've ever done in my life. I would like to apologize to my family for the anguish I've put them through over the past five years.

I have put them -- you know, my behavior has created undue stress, resentment, embarrassment, rejection, disappointment, and shame. My family has always been there for me, they supported me through my many years of accomplishments and were proud to celebrate my successes. I'm truly sorry to them for letting them done.

As a person I have always been an over achiever, trying to be the best person that I possibly could be. I stood proud to have many titles, the

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

titles of alter boy, boy scout, son, brother, husband, father, daddy, CPA, director of finance, the main care giver of my parents, a volunteering mason, and now I hang my head in shame of my new title, that of a felon.

I would also like to apologize to my clients for placing them in jeopardy, my relationship with my clients is more than just business, I care for them, I care for them as people and am really concerned for their fiscal well being. Their support for me means really everything. I want to thank all of my clients for being here to support me today.

I would also like to thank the IRS for stopping my path of greed. I ask myself over and over again, you know, how did I get myself in this situation.

I realized that at one time money was the priority of my life. The more I made, the more I wanted to keep, I was greedy. I was driven by the misconception that the more money I had, the more important I would be, the better I would feel, I actually forfeited my self worth for net worth. Being greedy was stupid and absolutely wrong.

Your Honor, I never imagined being here under these circumstances. I have worked real hard over the past five years to rebuild my purpose. I have accepted

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

responsibly for my wrongdoings, I have learned and grown from my mistakes both personally and professionally.

I'm very passionate about the accounting work that I do. I changed my business process significantly, I actually opened an office at one time I actually drove from house to house, and the office enables me to take more time to thoroughly review completed tax returns with my clients after they are completed prior to their submission.

Five years ago I relied soley on a verbal exchange between my client and myself. I have instituted a best practice model requiring the client to complete a written organizer. This enables me to not only hold myself but the client accountable for the information that is submitted.

I continually reject clients who provide documentation that simply does not make sense to me. I have improved my record keeping, I keep track of a daily list of my clients. I record the payments that are received, I make copies of my deposits and all of the items of deposits to ensure all my income is accurately reported.

Your Honor, I am a different person because of this mistake. I have learned the importance of

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

honesty, integrity and trust. I know that money is not as important as family and freedom. Freedom is more important to me than anything. I have given back to my community and hope to continue to be able to do so.

I volunteered at a camp for under privileged children in Coatesville, I became a certified practitioner in the VITA program which offers the free tax assistance.

It is so interesting and so gratifying to be able to help the individuals that are in need. I mean it is also gratifying to speak to the director of the program at my actual location because they typically don't have an individual of my caliber to assist.

So, not only can I assist the individual with preparing the federal tax return, I can assist them with their state return, I can assist them with their local return, I can assist them with a real estate tax rebate, all of those things that people that are indigent may qualify for that an individual with my caliber, my experience can certainly assist.

It is very rewarding to see an individual that is indigent, you know, just ask me if I can stay because they didn't realize that I would be able to do these things, they want to run home and get the applicable forms so that I can assist them.

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

Your Honor, I won't be back. I'm definitely a better accountant, a better human being because of this experience. I hope that you can see that I have changed.

The past five years has been extremely stressful for me as I rebuild my life. I am passionate about my work. I hope to be able to provide income to support my family and continue to prepare returns to serve my clients and continue to be able to give back to the community.

I hope to be able to continue to be the main care giver of my parents. Mom has had multiple strokes and dad is eighty-two and just suffers from the typical illnesses of aging.

I will continue to respect and follow the laws and rules dictated by the IRS and you. As God is my witness I am in the path of honesty and trust. I am ready and willing to accept.

THE COURT: I appreciate your comments. I do have a few questions that arise from not only your comments but Mr. Engle's arguments which were very eloquent, but every now and then something just burns to be questioned just a little bit more.

One of them is your admission that your behavior that led you to be prosecuted, plead guilty

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

and stand before me now, was all about greed. Yet I am trying to find how greed causes a person to fraudulently prepare tax returns for others.

Obviously they are paying you anyway. You are not on commission --

THE DEFENDANT: No.

THE COURT: -- on how much of a return they might get from the IRS the more you up the deductions, I don't understand that.

THE DEFENDANT: Your Honor, the unfortunate situation was that I became known as an individual who got, you know, nice returns for individuals so that my referrals increased accordingly.

THE COURT: Well, you are also known for being a person that gives advice to non-profit organizations.

THE DEFENDANT: Yes.

THE COURT: And charitable organizations and helping everybody else, does the same thing apply? I mean, Mr. Trauffer, there is a difference here. Are you actually saying that this was a business tactic of yours?

THE DEFENDANT: No, it was a personal tactic of greed, trying to get more and more clients.

THE COURT: Same thing.

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

THE DEFENDANT: Yes.

THE COURT: So, my way of describing it was different than yours but you answered that question. I understand devaluing your own business to save on your own taxes as something that however egregious and wrong is also based in not wanting to pay more to the government in taxes.

There are many, many, many people in this country that may want to do the same thing that you do but don't, because they don't have the skill. They don't have the knowledge as to how to navigate that and they shouldn't be doing it in the first place.

THE DEFENDANT: Right.

THE COURT: They are supposed to be honest.

THE DEFENDANT: That's correct.

THE COURT: It seems to me that with all of your skill, you have always had the ability to conduct business with good business practices.

THE DEFENDANT: Absolutely.

THE COURT: But, you chose not to, would I be right?

THE DEFENDANT: That's correct.

THE COURT: And choosing not to made it easier for you to sloth off the lack of corroboration or support for the very many deductions or expanded

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

deductions that you were affording other clients, right?

THE DEFENDANT: That's correct.

THE COURT: Okay. I'm having trouble seeing how that is a skill that should be afforded to you to impart to others because the statement that it says is that okay, we are trusting him to be totally rehabilitated right now and he does not need to be punished in that way and, furthermore, he doesn't need to be deterred, because you are asking me to believe that you will never do this again, and you are going to use all of your skills in the right way when I'm trying to figure out how that deters others from doing what you did or deters those clients from coming to you thinking that it is okay because wink wink, he can get you more money. Just don't say too much, word of mouth.

That bothers me as a judge who is supposed to be setting an example here that the conduct that you pleaded guilty to and was prosecuted for can be excused with all right, continuing in your vocation.

THE DEFENDANT: The requirement that I now have is that the individuals supply me with documentation, whether it be from their church, from their charitable organization, copies of receipts,

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

things of that nature, which in the past during my time in the 2001-2004 time line before I instituted that best practice model using each client organizer, I did not require documentation.

THE COURT: Right. But that in itself is a scheme, isn't it?

THE DEFENDANT: Not using the documents.

THE COURT: If you don't requirement documentation?

THE DEFENDANT: Right, and that is what I had done.

THE COURT: You can put that back on the clients, hey this is what they told me.

THE DEFENDANT: The client actually shows me the copies of the documentations. I don't actually make photocopies of those.

THE COURT: Right. I'm talking about what you said you used to do.

THE DEFENDANT: Yes.

THE COURT: What this is about.

THE DEFENDANT: Yes.

THE COURT: It is all part of the intentional acts that went into your crimes, am I correct?

THE DEFENDANT: That is correct.

THE COURT: Right. Now, you are doing what

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

you should have done the entire time.

THE DEFENDANT: Exactly.

THE COURT: The other thing that Mr. Engle argued and included in your packet, your severance package, since when does shielding a former employer from wrongdoing impact on your pension payment?

How can that particular agreement which I reviewed very quickly, how can you interpret it to mean that you are some how being extremely noble and giving up your pension?

MR. ENGLE: Excuse me, Your Honor.

THE COURT: That is what I heard you say.

MR. ENGLE: No, no it is a severance package, he was getting a certain number of --

THE COURT: Severance instead of pension, I'm sorry.

THE DEFENDANT: Right.

MR. ENGLE: Well, it wasn't a pension program.

THE COURT: I get that.

MR. ENGLE: It was a severance package for income.

THE COURT: Same question, same question.

MR. ENGLE: Okay.

THE COURT: The question is why does one have

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

anything to do with the other?

MR. ENGLE: If I may, Your Honor --

THE COURT: Yes.

MR. ENGLE: -- I can point you to the section.

(Pause in proceedings.)

MR. ENGLE: In paragraph two, subsection A, it talks about how the company will pay you twenty-six weeks of severance pay minus the four weeks already paid during suspension at your current base rate of pay as of April 29, 2008. That's the severance package.

In subparagraph B of the same section two, it says "You also will not be eligible for the severance payments and other benefits described in this paragraph two until one, the company has received an executed copy of this agreement."

In this agreement it indicates that he must keep confidential all information that he learned of during the course and within the scope of his employment at Frankfurt Hospital.

So in order to provide information to the government about any activities that he learned of during the course and within the scope of his employment he could not execute this agreement, Your Honor.

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

He couldn't sign it because he was going to tell the government about such things. So he could not have lied at Frankfurt Hospital and said I'll keep my mouth shut and I'll keep these things confidential, and give me the money.

THE COURT: Well, what I'm suggesting here, Mr. Engle, is whether or not that is his choice, if he intends to use his First Amendment privileges to expose wrongdoing, if that's indeed confidential information, which I suggest to you it is not, but if it is, he made a choice. But that is a choice that he makes after he is prosecuted, right?

MR. ENGLE: Of course.

THE COURT: Of course. And the reason he is even talking to Frankfurt Hospital about a severance package is because he is prosecuted.

MR. ENGLE: Well, yes, because he has lost his job.

THE COURT: He has lost his job.

MR. ENGLE: Of course. But the issue here is, Your Honor, many individuals seek to cooperate with the government out of total self-interest where they are looking to help themselves in some way, shape, or form.

THE COURT: Absolutely.

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

MR. ENGLE: Obviously, we recognize that that decision to cooperate with the government, or at least even to attempt to cooperate with the government, bears upon the mental state of the individual and their acceptance of responsibility, and that turning a corner to the appropriate type of conduct that we are looking for from our citizens.

Here, not only did he make that choice, but he had to make another choice. He had to make the choice of whether or not he wanted to say nothing to the government, accept the severance agreement, keep the confidentiality, and pocket sixty thousand dollars, or give up the sixty thousand dollars, not sign the severance agreement, and cooperate with the government.

So my point to Your Honor was simply that there was an extra level to this which is demonstrative of this man's decision that money is no longer the first and most important thing in his life.

It is an example of his recognition that in order to do the right thing you have to forego other things, and he had that choice to make. Do I sign the agreement and pocket the money, or do I go forward and say you know what, the money is not worth it, I want to provide this information to the government, it may be helpful. That is the choice that he made. It is a

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

choice that I would rather help or attempt to help than to accept the money that I could grab here. It's a change in thinking.

THE COURT: I understand your argument, Mr. Engle, but when I read this, and striking out subparagraph X, "Any whistle blower retaliation claims" --

MR. ENGLE: That was me, Your Honor.

THE COURT: Yes, I know. I know this is attorneys. I know that. And I am not making a negative comment about it, but I realize what is going on here.

It just seems to me that the kind of confidential and proprietary information referred to in paragraph six is trade secrets, patient files, etc., etc.

But, you can never consider criminal acts proprietary information and confidential information that would be restrictive, and that is the only way that this Judge looks at it.

Now, I don't know what information was imparted to the government, but it seems to me a bit self-serving to say that oh, look how he suffered, he lost sixty thousand dollars, because he never said anything before that.

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

MR. ENGLE: I am not suggesting that he suffered, Your Honor. What I'm suggesting is that it is demonstrative of a change of mind set. My advice to him was that based upon my reading of that severance package, he would be in violation of that agreement and subject to suit if he were to talk to the government about the kinds of things that he knew and learned during his employment at Frankfurt Hospital. As a result of that he had to make a choice.

Whether Your Honor agrees or disagrees with my assessment of the severance package language, he still was put into that choice. Do I take the money and keep my mouth shut, or do I say that the money is not important?

THE COURT: I can take your argument for that, for that worth, I can. But, is seems to me if someone has knowledge of wrongdoing and they overlook it until he is faced with this choice, then it is an opportunity for him to make the right decision. I can do that, I can accept it for that.

But, it also says to me, and it begs the question well if he had that information before, what did he do about it or why didn't he? So it seems to me that he, at the time he was working there, continued. If he had something to say at the government at all, he

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

must have continued to ignore wrongdoing for his own purposes. He had a very nice job --

MR. ENGLE: The same way --

THE COURT: -- a nice salary, you know. One would say why, with that salary, would he need more? But, it just seems to me that a person who is truly rehabilitated does not wait for that choice to be thrust upon him, he does the right thing in the first instance.

MR. ENGLE: It is the same situation that we see with all issues of cooperation, Your Honor. They all happen after the time of being charged because that is when the opportunity to cooperate happens. And here, even though Mr. Trauffer thought this information might be useful to the government, it turns out the government's assessment was no criminal wrongdoing was occurring, so there was really nothing that he was overlooking in the grand scheme of things.

THE COURT: Well, he thought so.

MR. ENGLE: Well, he thought there were things that were problem areas, that he had concerns about, that he did not know whether or not the government would consider them criminal or not criminal, whether they were useful to the civil division of the U.S. Attorney's Office, whatever it may

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

be.

But he is no different than any other individual who appears in front of this Court with a 5K1 departure. The same scenario applies. The same people are given benefits of reductions in sentences for recognition of that acceptance of responsibility and assistance.

THE COURT: I have to believe that when the government wants to make a 5K1 motion they have a reason to do that, and that is not the basis of his plea here.

MR. ENGLE: No.

THE COURT: That's not what we are talking about, because he thought he had something to offer does not give him that status. If you want me to consider that he thinks he is doing the right thing, I will.

But it may not have been anything but an attempt, like anybody who attempts to cooperate was hoping for. It may not have panned out. I don't think it did.

In this case, you have to understand that the Court can take that argument only so far. It cannot be that all of a sudden the epiphany is that when the IRS stops you from behaving the way you behaved and

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

operating and conducting your life in business the way you did, stopped by an external force, that is criminal charges or an investigation and then criminal charges, it cannot be that that is the sudden rehabilitation.

So, if you want to talk to me about why I should be giving you a non-incarceration sentence, which by the advisory guidelines certainly you fit the eighteen to twenty-four advisory guideline range, it has to be something that is different.

So far, I have heard that you have done many things to help others. I have heard that. You are of great assistance and benefit to not only your clients, but your family and your friends and your extended family, which is different than your immediate family, and also to community service organization, volunteer organizations, charitable non-profit groups. I think that is worthy, very worthy.

I have to take that and balance it with considerations under the sentencing statute, Mr. Trauffer, and I think we have explained those things to you when you plead guilty, and I know that you discussed those with Mr. Engle. He has mentioned all of the sentencing factors very accurately in his sentencing memorandum.

One of those is promoting respect for the law

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

and deterring future criminal conduct. By doing those two things the public is better protected. They are all in one lump sum, I call them, they are all lumped together, and the deterrence piece is the first of those.

Now, I believe totally that you will not be doing this again. I believe that because you won't have the opportunity, number one, and number two, you have been greatly shamed by your conduct. And nobody, no friend, no client, is going to stick by you if you do something like this again, and you realize that.

Your intelligence makes you understand that, and your intelligence makes you say I have got to make this right or I will never be able to hold my head up and face anybody. So I understand that.

But, there is this difference in deterrence from specific and general deterrence. Deterring you, specifically, from future criminal conduct is one thing.

General deterrence is how do others out there in the community, in society, view this Court's assessment of your criminal behavior, and being too lenient in a situation like this means that it is worth the risk to continue to do this.

You are not the first tax preparer to appear

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

before this Court or in the Eastern District of PA or in any of the Federal Courts all over the country. It happens very often, and each one swears they will never do it again.

I believe almost everybody that says they will never do this again, but there are others out there that continue to do it, so we have to address that. Our sentence needs to address that too because those other tax preparers who may not be as smart as you think that it is worth the risk. I have to make sure they do not get that from this sentence. I am not about helping them think that.

But moreover, unless they and others in the community, including tax clients, understand that this is criminal, we have not promoted respect for the law. That is why those are very important factors to the Court.

I look at the advisory sentencing guideline range, which is another factor I must consider, and I do, and I say eighteen to twenty-four months, that is a lot of time for someone with no criminal history, whatsoever, has never spent any time in court, who has pleaded guilty, and I will tell you now it is not the reasonable sentence that I would choose.

But, there is something between zero and

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

eighteen that I will choose. I just listen to everything and try to figure out what is the best, but I do think that is too severe a sentence for you.

So, I am guided by the case law that says as long as I support my decision, as long as I give weight to each of the factors that are relevant and appropriate, I will be imposing a fair and reasonable sentence.

Now, there are more factors to consider. Just punishment is one of them, and just punishment means the punishment must fit the crime, and as your attorney noted, it has to be the least restrictive, the least amount of punishment to affect or put in place the rest of the sentencing factors, another reason why I think the eighteen to twenty-four month range is not a just punishment.

However, there are more things, the level of rehabilitation, the need for correctional treatment, if any, which I don't see in your case. The prospects, I think, of someone's rehabilitation is based on what they have done before arrest, post arrest, and in light of what they are facing.

You certainly have expressed a behavior that is fully capable of being rehabilitated, and I think that is the kind of thing that time will tell. So if

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

you are totally rehabilitated right now, I accept that. I accept that you will not do this again. That does not necessarily mean that a just punishment does not also be imposed, but it certainly does weigh heavily on how I judge the just punishment.

Your future contacts and future skills, your ability to be a law-abiding, productive citizen in the future, not just to help out your family, because every defendant that is being sentenced, whether they pleaded guilty, whether they have been found guilty by a judge or a jury, every one of them has harmed their family by their actions, every one of them leaves the burdens to their spouses, their children, their parents, sometimes the burden just by not being there for them. But, that is a harm that the Court can do little about.

There are some situations where the Court can do more about it than in others, but I have to tell you that that cannot persuade me to keep you on the street right now. You must understand that.

So, I think those are the relevant factors that I see that are appropriate for me to consider in your case because when Congress passes a law that law must be enforced, and there is nothing to attack these laws right now, and if they have been attacked and appealed in the past, they have been upheld.

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

So we stand here to enforce the laws, but we want to do it in a fair and reasonable way, and that is why I wanted to hear from you and every one of your letter rights and your attorney, and I have read everything. I have tried to piece this together, and yet I never make up my mind what my sentence is going to be until actually all of the evidence is in, and I am not sure we are actually done yet.

So, while I cannot determine precisely what I am going to do right now, I have given you an idea and all of your supporters of what I am thinking about in terms of important issues and factors under the sentencing statute which is what I believe I need to do. Is there anything else you would like to tell me?

THE DEFENDANT: No, Your Honor.

THE COURT: Thank you. Anything else, Mr. Engle?

MR. ENGLE: No, Your Honor.

THE COURT: All right. Thank you. I think I will turn to the government.

MS. MORGAN-KELLY: Thank you, Your Honor. Certainly, we have heard a lot in the defendant's presentation about one of the 3553(a) factors which is the nature of the offender, but as the Court just alluded to, I would like to direct the Court's

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

attention to the many other factors under Section 3553(a), starting primarily with the nature of this offense.

In 2001, the year for which defendant was first charged, he was already making a six figure salary doing accounting work at Frankfurt Hospital, yet over the course of the four years that he evaded taxes he secreted almost four hundred thousand dollars worth of income. It was not a small amount of money that he was secreting.

His clients were primarily Philadelphia police officers and firefighters. I think the current starting salary for a police officer in 2010 is forty-one thousand dollars. Obviously, back in 2002 it was less than that.

So they were making relatively small salaries compared to Mr. Trauffer while he was in the process of building a five bedroom, three bathroom, vacation home with money that he was secreting, not paying taxes on to the U.S. Government.

The clients that were interviewed in the course of investigating this case certainly were happy when they received refunds, and then were subjected to IRS audits, and then had to pay the money back to the IRS, which was in many cases an extremely humiliating

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

experience for them, certainly as law enforcement officers and firefighters.

A number of people are here today who fall into the category of defendant's clients. What is interesting is that they weren't asked how many of them at any point received a refund, and that is, in fact, what prompted a criminal investigation here.

In the years 2002, 2003, and 2004, each year over ninety-percent of defendant's clients received refunds on their taxes. That is an astronomical proportion of clients receiving refunds, and his client base nearly tripled from 2002 to 2004. So, that word of mouth about this being the guy who could get you refunds was very effective and grew his business expedientially.

Certainly, the defendant has done many positive things in his life, but he is asking you now to look only at those, and he is asking you now what about his family, and how can they be helped, and how can he help them.

He wasn't thinking of them in 2001, in 2002, in 2003, in 2004 when he was not paying his taxes, when he was helping all these clients illegally get refunds. He wasn't thinking of them, but now he is asking the Court to think of them.

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

We spoke a little bit about the severance package earlier, and I would like to direct the Court's attention to the fact that basically the defendant gave up sixty thousand dollars as I understand it.

His net worth, as reflected in the presentence report, is over 1.6 million dollars, so sixty thousand dollars in that equation is not significant, certainly for someone who is looking to help themselves, Your Honor.

Now, with respect to cooperation, I think defense counsel stated there was no criminal wrongdoing. In reality, there very well may have been criminal wrongdoing, but the government has to make an assessment as to whether it can prove that criminal wrongdoing beyond a reasonable doubt, and certainly that was a factor in assessing the information that the defendant provided.

Defendant spoke about a shift in priorities, and I would submit that yes, Your Honor, there has been a shift in priorities, not from the priority being money to the priority being doing the right thing, but perhaps what you have in front of you, Your Honor, is someone whose priorities have shifted from amassing as much money as possible to doing anything possible to stay out of jail, a person who led a very comfortable

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

life up until this point who desperately does not want to have the experience of going to jail. Perhaps that is what you face today, Your Honor.

So the Court has to consider is it enough in these cases to just give the money back. Is that enough? Is that the message that should be sent through this case?

What will send a message to this particular defendant, who, in fact, wants to remain in the environment that prompted all of this temptation and prompted him to commit this criminal conduct?

You have a wolf in the henhouse saying "Your Honor, send me back to work in the henhouse and I promise to police myself and not bother any other hens."

What will provide deterrence not only to this defendant, but as the Court just stated, to other defendants who are considering engaging in this type of activity. Should they think "Well, I can take all the money I want from the IRS, and I will just pay it back when I am done." Is that sufficient?

What is sufficient punishment in this case for this defendant? What is sufficient to protect the public and other taxpayers who might turn to this defendant to have their taxes prepared?

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

What is sufficient to promote respect for the law that the Court talked about that Congress has passed that says, in fact, this is a very serious offense and that the offense should be punished, and reflect the seriousness of the offense?

Your Honor, when you consider all of the factors of Section 3553(a), not just that one that defendant would have you focus on, but all of the factors, the government submits that a guideline sentence of imprisonment is the most appropriate sentence in this case.

THE COURT: Thank you.

MS. MORGAN-KELLY: Thank you.

THE COURT: All right. Is there anything else anyone would like to present before this Court imposes sentence?

MR. ENGLE: Your Honor, we just ask to say the following. While I understand the government's argument about is it enough to just pay the money back and what kind of message does that send, we do look to the importance of post defense rehabilitation as a sign.

I would say what kind of message does it send to not take that into significant consideration in saying that if you have done something wrong, don't we

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

want people to own up to it? Don't we want people to do the things they need to do to make it right or to get back on the right track?

And the flip side argument is well, if you do not give them jail, people think it is okay, just pay the money back. But how many people actually do that unless and until they are forced to. In so many cases, restitution does not occur. Naturally it doesn't occur because the person wants to do it, it is because it is forced upon them.

The flip side argument to what the government is saying is what message does it send if we say we put you in jail anyway if you do all of these right things, and we do not recognize that if you turn your life around and you do the right things, it does not change anything. You are treated the same way as the person who says "I will pay it back if and when I have to."

So, there is a message that goes both ways, Your Honor, and I think that as far as a deterrent going out to society, the embarrassment that this man has suffered, being branded as a felon, the things that he has lost, and what he will carry with him for the rest of his life as a result of this, that is a deterrent to people, particularly people in what we call white-collar cases, professionals who walk around

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

with their heads held high about who they are with respect to their job and their title, and he has lost some of that, and that is a punishment.

But, we also send a message to society that well, does it matter if you do the right thing. Does it matter that you should do the right thing? What I am suggesting here, Your Honor, is that by doing the right things, by wanting to do those things, by voluntarily paying back extra sums of money for his clients, by demonstrating all of those things, I submit to you that Robert Trauffer has indicated that he can follow the rules and that jail is not the answer. Jail is not the answer for this man.

I know that Your Honor knows that you fashion a sentence here based upon this individual and his characteristics. And for this man, incarceration is not necessary for the right things to occur because they have been occurring for the past five years.

Putting the hen or the wolf into the henhouse, that would have happened. He has had five years. He was given the rope, and so many people tie it in a noose and hang themselves with it when given that rope, Your Honor. We see it.

This individual took that rope and he started pulling himself up with it. He pulled himself out of

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

the place that he was in into where he should be, and this person has demonstrated over the last five years that that wolf can play just fine with the hens and take care of them. And you know what, all those hens are here, they are here.

Can you imagine that this many clients would come in in support of a man after what has happened if he was really the wolf in the henhouse, Your Honor? Isn't it also curious that the government does not have one single victim impact statement to provide to you, not one witness of a victim who comes forward and says this is what happened, and I am so angry at him and I do not forgive him. That is not it. This is forgiveness. This is the community forgiving this man for his transgressions.

An individual in that situation I submit to Your Honor does not need jail. There are many other options for Your Honor in terms of fashioning a sentence, and I do not need to go over those, you know them better than I do.

THE COURT: Right.

MR. ENGLE: So what I am asking here, Your Honor, is that under all the sentencing factors, in sending a message to the community and for this person as an individual, I'm asking you, in fact, I'm begging

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

you not to put him in jail. Thank you.

THE COURT: Thank you. Mr. Trauffer, anything else?

THE DEFENDANT: No, Your Honor.

THE COURT: When the Court emphasized some of the sentencing factors that it thought were appropriate and relevant to consider in this case, it did not mean to exclude the early and voluntary payment of restitution plus penalties and interest, plus clients' owed amount due in part to Mr. Trauffer's tax preparation of their tax returns because this Court also recognizes that those clients had a hand in that, and whether or not that has something to do with why some of them may not have written a victim impact letter, I do not know.

I go by what I have, not by what is not relevant if it is not here, and it is irrelevant. But it should be noted that the Court has to look at not only Mr. Trauffer, his personal history, his own characteristics, his family, his education, his employment history, his contacts in the community, his good works, as well as his involvement in this crime, any other background and factors such as addiction, which I do not have any evidence of here.

It also has to look at and recognize the

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

seriousness of these offenses. That is why we are here. And in doing so, not completely ignore the import of these crimes and their congressional intent in legislation, but also what is supposed to happen when they are violated.

So, we looked at all of those. We think that the crimes are serious, and our sentence must reflect the seriousness of the offenses. We also believe that our sentence must promote respect for the law and protect the public, as well as deter others in the community as well as Mr. Trauffer from committing crimes of this nature, and in his case, of any nature, again.

Providing a just punishment for this offense is the hardest part for the Court to decide today because that is the part that Mr. Thriftier and Mr. Engle are so passionate about, and I do not blame them, and that is also the part that it comes down to for the government because -- well, they have been paid.

We make it a practice, a policy decision as well as an individual decision, and we have rarely seen this differently, and we keep our mind open in every case, but it is always the same premise.

Because you have the means to pay what you owe prior to sentencing is consider on the plus side,

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

but does not buy you out of consideration of the rest of the factors.

I have to be there because too many people that are involved in the criminal justice system do not have the means, and they may want to pay, but they cannot.

So just as I do not punish people for not having the means, I do not reward because they do. It is there judgment and decisions that I look at. We are happy that it has been done, and with such abundance, but we also know that clients who readily and eagerly perhaps, accepted the kind of tax preparation advice that Mr. Trauffer gave them should bear their own tax consequences.

I don't suggest that they need to be here and be prosecuted. That is not this Court's decision. We do not make prosecution decisions. I am saying that it is not only one person that creates that. So, buying their tax liability does not necessarily mean that you get credit for that. That is what I am saying.

So back to non-monetary reasons, we have stated what we think is important here. We also believe that unless the public understands that this can't be done, unless they understand that the courts do not tolerate it as well as Congress and the

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

government, it will continue. So we have to say something more than that.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of this Court that Mr. Trauffer be committed to the custody of the Bureau of Prisons to be imprisoned for a term of ten months. That term of incarceration is imposed on each count, but will be served concurrently to each other. That is on thirty-eight counts.

Upon his release from imprisonment he shall be placed on supervised release for a term of three years. Again, that is on each count, but those three years on Counts 1 through 4 that is, and terms of one year on Counts 5 through 38 on each counts, all of those terms will run concurrently to each other.

Within seventy-two hours of his release from custody of the Bureau of Prisons, he must report in person to the United States Probation Office in the district to which he is released.

So, any recommendations before I proceed with conditions of supervised release? Are there any requests as to recommendations that this Court may choose to make to the Bureau of Prisons as to his classification? Mr. Engle?

MR. ENGLE: I would ask, Your Honor, that --

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

certainly submit that in this circumstance that Mr. Trauffer would qualify for a minimum security related facility, and hopefully one as close to his family members and friends as possible so that he can remain in contact with them during his period of incarceration.

THE COURT: All right. We have no real authority over the Bureau of Prisons, but we do make recommendations when requested if we think they are reasonable.

We will recommend that Mr. Trauffer be classified to serve his sentence in a minimum security institution that is as close to his family, geographically as possible, and that would be the Delaware Valley. If necessary, they may consider closer, maybe in the Middle District area because he is probably less Delaware Valley. So, I will not say Delaware Valley. I will say as close to his family as possible.

Now, while he is on supervised release he may not commit any other crimes, federal, state, or local. He is prohibited from possessing any firearms or dangerous devices.

He may not possess any illegal controlled substances, and he must comply with all of the standard

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

conditions that are adopted by this Court, and they will be outlined for him by the United States Probation Office one by one, but I emphasized a few of them already, and I have a few special ones that I would like to mention.

First of all, he must provide the United States Probation Office with full disclosure of his financial records, and that will include his own annual income tax returns if they are requested of him.

He must also cooperate with the probation officer in investigating all of his financial dealings, and provide truthful monthly statements of his income.

He is also to continue to cooperate fully with the Internal Revenue Service by filing all delinquent or amended returns and by timely filing all future returns that come do during the period of supervision.

He is to properly report all correct, taxable income, and claim only allowable expenses on those returns. He is to provide all appropriate documentation in support of those returns.

Upon request, he is to furnish to the IRS all information pertaining to assets and liabilities, and he is to fully cooperate by paying all taxes, interest, and penalties due, and otherwise comply with the tax

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

laws of the United States.

He is prohibited from incurring any new credit charges or opening additional lines or credit without the specific approval of the United States Probation Office.

He shall not encumber or liquidate his interest in any assets unless it is in the direct service of any fine or restitution obligation or otherwise has the express approval of this Court. He must also cooperate in the collection of DNA as directed by the probation office.

In this case, and in particular because there was a great deal of emphasis on the motivation for Mr. Thriftier's criminal behavior, that of greed, the Court believes it is appropriate to oppose a fine. It is not a guideline fine. We do not think even he at his past level of net worth would be able to pay that, nor should he.

We are going to impose a more symbolic fine, and that is one thousand dollars on each count, Counts 1 through 38, and that is thirty-eight thousand dollars. That fine is due immediately, and shall be paid in full within ninety days of this judgment.

We always think it is appropriate, and we do so in this case, to think that any crimes that are

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

committed because of greed be meted out if the defendant has the ability to pay a reasonable fine to not compensate the Court, the government, or in any way the prosecution, because we are not imposing costs, but we think it is appropriate to make the statement for the deterrence we hope, but it is a symbolic fine that I have chosen, thirty-eight thousand.

And on top of that, he must pay the special assessment of thirty-eight hundred dollars which is due and payable immediately. That is one hundred dollars per count.

He must also notify the United States Attorney in this district who prosecuted the case, within thirty days of any change of his mailing address or his residence that may occur while any portion of the fine remains unpaid, or special assessment remains unpaid, because they are, that is the United States Attorney's Office, responsible for collecting that fine and special assessment.

I don't think that there is another term of sentence that the Court has forgotten to deal with, but I will listen to counsel or Mr. Hassinger, if I have not -- yes there is one.

I must as a matter of sentence impose the restitution amount. I know that it has been paid, but

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

for the record, we do impose the restitution amount, which I think is one hundred thirty-six thousand eight hundred and fifty-one dollars to the IRS which he has given credit for his payments to, fifty-two thousand four hundred sixty-five dollars to the IRS, that is on behalf of his clients.

Was there anything in addition to those two amounts even though he paid more in interest and penalties?

MR. ENGLE: No, Your Honor, although I do not know whether or not that the amount of money due and owing for the clients is actually compensable as restitution, Your Honor.

THE COURT: Yes, it may not be.

MR. ENGLE: But nevertheless, it has been paid.

THE COURT: All right. The total tax loss to the government in the first instance was one hundred eighty-nine three-sixteen, wasn't that agreed?

MR. ENGLE: Yes, Your Honor.

THE COURT: And one thirty-six and fifty-two, do they not add up to one hundred eighty-nine three-sixteen?

MR. ENGLE: They do. That is for purposes of loss, Your Honor.

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

THE COURT: Right.

MR. ENGLE: However, as far as restitution, because it is monies that are owed by the individual tax payers that is why I am suggested the fifty-two thousand may not be compensable as restitution.

THE COURT: Well, the defendant agreed to pay restitution to IRS including interest totalling two hundred and twelve thousand seven hundred and forty-four dollars and twenty-five cents, and that has been paid.

MR. ENGLE: Yes, Your Honor.

THE COURT: So we will order that amount to the IRS as opposed to one eighty-nine, and we will then correct ourselves, and not order the fifty-two thousand four hundred and sixty-five as restitution.

But our sentence must reflect what happens to that money if and when clients pay their share to the IRS. Was it contemplated that he would be absorbing that for the clients, or aren't they obligated to pay?

MR. ENGLE: It is my understanding that some clients paid the IRS, and had been reimbursed from that amount of money. Other clients have not been able to pay the IRS, and the IRS has been reimbursed from that amount of money.

Therefore, no clients should be technically

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

out-of-pocket for the monies that were due and owing to the IRS. That was the voluntary restitution payment.

THE COURT: All right. Well, let's put it this way. If that payment voluntarily made of fifty-two thousand four hundred and sixty-five should be in excess of what the IRS is owed or collects from clients and Mr. Trauffer, then any excess payments can be credited back to Mr. Trauffer, and that I think has to be said because those clients that can pay should pay, and this Court so rules because we do not think clients should get away with that any more than Mr. Trauffer should get away with it. Am I making myself clear here?

MR. ENGLE: I understand what Your Honor is saying.

THE COURT: Does the government have any question about that?

MS. MORGAN-KELLY: No, Your Honor.

THE COURT: Because I know the IRS can't collect more than they are owed, and so something has to happen to that excess, right? It is a process that I do not quite understand, but I do not think I have to for today.

What I am saying is they do not both pay it. The client and Mr. Trauffer does not both pay the

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

fifty-two thousand four hundred and sixty-five dollars. If the clients do pay, is there a time period in which they have been allowed to make those payments? Can someone tell me that, please?

(Pause in proceedings.)

MS. MORGAN-KELLY: Your Honor, it is my understanding that all of this money has already been disbursed in one of two ways. If the client still owed money to the IRS, the IRS was reimbursed from the money that Mr. Trauffer provided.

If the client had already paid the IRS in full, then the client themselves was given the money that Mr. Trauffer provided in the amount that was at issue in their particular case. But, the money has been disbursed.

THE COURT: So you are telling me that there is no more to be collected from any source?

MS. MORGAN-KELLY: Correct.

THE COURT: Okay. And that means that clients who had paid were reimbursed?

MS. MORGAN-KELLY: Correct.

THE COURT: All right. Then that is a choice that was made by --

MR. ENGLE: The purpose was made to make all the clients whole so that they did not have to go

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

out-of-pocket to compensate the IRS for what they should have paid based upon Mr. Trauffer's professional advice to them in preparing their taxes.

It was his decision to compensate them whether it went directly to the IRS because they could not pay it or back to them because they had to pay it.

THE COURT: Well, then that amount of money needs to be expressed in my sentence as additional restitution that he made that he will not be entitled to a credit for, or any refund for.

MR. ENGLE: Right, it was voluntary.

THE COURT: I am going to call that restitution because if the IRS has been made whole, and it is one of the few cases in which that has happened, I am going to call that additional restitution which is ordered and has been paid, and he is given credit for that, and I think my sentence reflects that recognition. All right. Other than that, is there anything else?

MR. ENGLE: No, Your Honor.

MS. MORGAN-KELLY: Your Honor, is the Court inclined to impose any occupational restriction on the defendant for the term of supervised release?

THE COURT: I do think that there is a necessity to do something of that nature for a period

FORM 2094 ® PENGAD • 1-800-631-6989 • www.pengad.com

of time. I do think that while he is incarcerated he certainly is not allowed to conduct a business and he will not be able to.

As a condition of supervised release, I am going to restrict his professional activities. I do not allow, and I will not allow, as a condition of my supervised release for him to engage in tax preparation.

I do not suggest that he cannot give tax advice because there probably is no way to monitor that. I have to be clear here though what he is doing.

So what I will do is this. Any financial or tax role he plays as in the course of his employment while he is on supervised release, which is going to be a total term of three years, he must disclose to the United States Probation Officer.

I want them to be able to verify his conduct and activities in his employment. That is part and parcel of full disclosure of his financial records because they will be reviewing that, not because he may owe money, that is not that case, but because they have to check up on his conduct.

That is what they do when he is on probation. But, I will specifically preclude Mr. Trauffer from

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

preparing tax returns for the balance of the time that he is on supervised release.

MR. ENGLE: Your Honor, we are --

THE COURT: I think that is an appropriate consideration.

MR. ENGLE: Respectfully, that does not allow him to do any work as an accountant. I mean that says that for three years after he serves a ten month sentence he cannot do any work in his given field.

THE COURT: I am not going to allow someone who has conducted this kind of scheme to continue to do that while they are on supervised release.

MR. ENGLE: Even though for the last five years he has done it without a single problem.

THE COURT: I am sorry, Mr. Engle, that is my ruling. I do not believe that it is appropriate.

MR. ENGLE: Understood.

THE COURT: Deterrence has to mean something, and deterrence means that not he nor anyone else should think that they can reengage in the same activities even though I believe that he has tried to do it right.

That says to me that he knew how to do it right all along. This is not a mistake. Mistakes do not happen. These were intentional acts, so I am imposing that restriction.

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

I do not know what will happen with his CPA license, and if he cannot give other advice, then that is the measure discipline that the professional bodies that regulate that think is appropriate. But I do not know that. I do not know that.

I heard him say he was giving advice to non-profits, and I suppose that he will continue to try to do that. But he is not going to prepare tax returns, that is what happened here. Am I throwing out his license? No, I am not. If he can make a living somehow and do it legally, he may, but no tax preparation. And other than that, is there anything else to address?

MR. ENGLE: Yes, Your Honor, may I ask that you stay the imposition of the sentence for thirty days?

THE COURT: We would do so for classification purposes. We would allow him to remain in the community while he is being classified, and we are going to do so in any event. Is that what you mean by staying the sentence?

MR. ENGLE: Giving him a turn in date so that classification can occur --

THE COURT: Yes.

MR. ENGLE: -- and he can self-surrender to

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

whatever facility the Bureau of Prisons designates.

THE COURT: We have a recommendation here from Pretrial Services that that is a recommendation that the Court should accept. We agree that he is not a flight risk and he can take care of any personal affairs are outstanding.

We will allow him to self-surrender within thirty days, but no later than thirty days, and at the direction of the United States Marshals. When he is classified they will notify him.

MR. ENGLE: Understood.

THE COURT: So it may be twenty-eight days, maybe twenty-nine days, but he will surrender in thirty days as directed, and in that respect, we are deferring execution of this sentence. Is there anything else besides appellate rights?

MR. ENGLE: No, Your Honor.

MS. MORGAN-KELLY: Nothing from the government, Your Honor.

THE COURT: Thank you. Then we will impose the sentence that we just listed. We will also tell Mr. Trauffer that he has a right to appeal this sentence. I know that there was a plea agreement here. Were there limitations of his appellate rights in that plea?

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

MR. ENGLE: The standard ones, Your Honor.

THE COURT: Okay.

MS. MORGAN-KELLY: Yes, Your Honor.

THE COURT: That is what my memory said. I think, Mr. Trauffer, you should understand that you have a right to appeal this sentence. This sentence though must be appealed in writing, and it must be appealed within ten days of today's date.

If you cannot afford the services of an attorney to file your appeal or to process your appeal or argue your appeal, one with be appointed to represent you free of charge.

That appeal is filed here in the Eastern District of Pennsylvania in the clerk of court's office, but it is an appeal directly to the Third Circuit Court of Appeals. Do you understand that?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Ten days in writing with court appointed counsel if you so qualify, do you understand that?

THE DEFENDANT: Yes.

THE COURT: Very well. I mentioned to you, but I know that you and Mr. Engle will discuss this, that you have limited rights to appeal from the terms of your guilty plea, and you should discuss those with

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

your attorney as to whether or not any of these qualify.

But, as I recall the usual terms, if the government files a direct appeal of my sentence, then you maintain your full right of direct appeal. But if the government does not do so, then what you have left are sentences that exceed the statutory maximum or exceed the advisory guideline range, and that is not the sentence that I imposed on you. So I do not know what you will have left. All right? Is there anything else we could address?

MS. MORGAN-KELLY: Not from the government, Your Honor.

MR. ENGLE: No, Your Honor.

THE COURT: Well, I want to thank counsel and Mr. Hassinger for supplying me with a full and complete record here so that this Court could review it ahead of time.

I also wish to thank the family and friends and clients of Mr. Trauffer for their support of him. He will continue to need your support whether as a client in business or as a friend, certainly as a family member.

He is going to need your support while he is in. He didn't get the full measure of the government's

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

request, and he also didn't get the full sentence that he requested.

But, the Court imposed one that it thought was more fair and more reasonable under the circumstances, and we do not try to please people, we do not try to make sure that everybody likes what we do.

But, we want to assure everybody that it is a difficult decision in every case, and in particular, this one, and we wish you well. Good luck, Mr. Trauffer. We are in recess. Thank you, Mr. Hassinger.

(Proceedings adjourned, 12:18 p.m.)

* * *

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com

CERTIFICATION

I, Michael Keating, do hereby certify that the foregoing is a true and correct transcript from the electronic sound recordings of the proceedings in the above-captioned matter.

3-1-10
Date

Michael Keating
Michael Keating

FORM 2094 PENGAD • 1-800-631-6989 • www.pengad.com